Green, J.,
delivered the opinion of the court.
This is an action on the case, for a nuisance. There arc *214 two counts in the declaration, but tbe verdict was for the defendants below on the second count, and against them on the first count, from which they appealed. It is, therefore, necessary to notice only the first count of the declaration.
The plaintiff alleges that he was “the owner of five dwelling houses and out houses in the town of Nashville, and in a thickly settled and populous neighborhood in said towm of great value, to wit: of the value of, &c., and being owner and possessor, and occupying the same, by himself and his tenants, until the 12th of October, 1847; and that] the defendants wrongfully and-injuriously erected a powder house within one hundred and fifty yards of the dwelling houses and out houses of the plaintiff, and within sixty feet of the line of the Corporation of Nashville, situated in the populous and thickly settled neighborhood, in which, within a circuit of five hundred yards around said powder house of the defendants, included five or six hundred persons, there dwelling and remaining; and the defendants wrongfully and injuriously caused to be stored and kept large quantities of gun powder, an inflammable and explosive material. And whilst the said powder house was s.o kept and used in the thickly settled and populous neighborhood aforesaid, and there was a large amount of gun powder stored therein, to wit: five hundred kegs; af-terwards, on the 12th of October, 1847, the said powder house was stricken by lightning, by means whereof the powder therein was ignited, and an explosion caused therefrom, which shattered, overturned, and destroyed the dwelling houses and out houses of the plaintiff, rendering them of no value to the plaintiff, wherefore he is injured, and hath sustained damage, &c.”
The jury, under the instruction of the court, found for the plaintiff, and the defendants appeal to this court.
.The only question in this case is, whether the erection of a powder magazine in a populous part of the city, and keep *215 ing stored therein large quantities of gun powder, is per sc, a nuisance. And without doubt we think it is.
The elementary treatises on criminal law, hold, that it is a nuisance, and Lord Holt so held in an anonymous case, reported in Holt’s Rep., 499. The case was this: “One was indicted for a nuisance for keeping several barrels of gun powder in a house in Brentford Town, some times two days, some times a week, till he could conveniently send them to London.
“Holt, C. J. To support this indictment, there must be apparent danger, or mischief already done. 2dly. Though the defendant had done this fifty or sixty years, yet if it be a nuisance, time will not make it lawful. 3dly. If at the time of setting up this house, in which the gun powder is kept, there had been no houses near enough to be prejudiced by it, but some were built since, it would be at the peril of the builder. 4tidy. Though gun powder be a necessary thing, and for de-fence of the Kingdom, yet, if it be kept in a place dangerous to the inhabitants or passengers, it will be a nuisance.”
Chief Justice Kent refers to this case, as reported in 12 Mod., 342, in the case of the People vs. Sands, (1 Jh. Rep., 78,) and discredits it, because of the loose manner in which it is reported, and the book in which it is found.
We understand the case as distinctly asserting, that if gun powder be kept in a place, dangerous to the inhabitants, it is a nuisance. And Lord Holt’s report of it, entitles it to full weight, as the judgment of one of the ablest common lawyers that ever sat in Westminster Hall.
Blackstone in his Commentaries, (vol. 4, p. 167,) says: “Common nuisances” are a species of offences against the public order and economical regimen of the State, being either the doing of a thing to the annoyance of all the King’s subjects, or the neglecting to do a thing which the oommon good requires.
*216 It seems to us, that there arc few things one could do, that would annoy the community more than the deposite of a large quantity of gun powder in the midst of a populous city. And this is so universally felt to be the case, that the practice is to erect magazines for keeping powder at a distance from the habitations of man.
The fact, that it is liable to explode by means of lightning, against which no human agency could guard, is decisive of this question. If its explosion could only be produced by human agency, there would be much force in the reasoning of the majority of the court, in the People vs. Sands, that the question, whether it is a nuisance or not, depends upon the manner in which it is kept. Because there might be a building so secure, and a method of keeping it so careful and safe, as that danger would not be apprehended. But even then, with the utmost care, and the greatest confidence in the prudence and discretion of those whose business it might be to deal in it, if it were in the heart of the populous city, it is be-lievedfew of the inhabitants would feel at ease. Som eaccident might cause an explosion, and such would be the terrible and wide spread destruction from it, that the whole population would live in dread of some horrible catastrophe.
But when we know that the electric fluid, the irresistible effects of which are disclosed in every thunder storm, may, in defiance of every precaution, at any moment cause it to explode, it cannot be doubted, that if five hundred kegs were stored in a magazine in the heart of this city, every thunder storm would awaken an universal alarm and consternation in the minds of the inhabitants.
But it is said, the fears of mankind will not,' alone create a nuisance. That is very true, if these are idle and silly fears, produced by imaginary dangers. But in the case stated, the dangers would be real, and all men of reflection, and prudence, would feel them to be so; and, therefore, their appre *217 hensions would be well founded. Can it be possible that the l$.w shall protect us from the annoyance of a pig-stye, or a slaughter house, and yet that it affords no protection from a danger that might be a constant annoyance, and which may, and sometimes does, result in a great destruction of life and property. Surely we think not.
There is, therefore, no error in this record, and we affirm the judgment.