## CITY OF NASHVILLE, Plaintiff in Error, v. PETER NEVIN, Defendant in Error.

Middle Section.    October 25, 1930.

338

J. Washington Moore, Jack Keefe, Thos. G. Kittrell, R. P. Dews, and O. W. Hughes, of Nashville, for plaintiff in error.

C. II. Rutherford, of Nashville, for defendant in error.

DeWITT, J.  On January 3, 1928, Peter Nevin (hereinafter referred to as the plaintiff), while walking on the public sidewalk on Eighteenth Avenue, North, near Church Street, in the City of Nashville, was injured by a fall resulting from his slipping upon ice covered by a thin film of snow. He sought in this action to recover of the City of Nashville and J. C. Napier damages for his injuries.  He obtained a judgment, based upon the verdict of a jury, for $1000 against the City, from which the City has appealed in error.  The ground of action as stated in the declaration is as follows:

"One of said sidewalks or streets is Eighteenth Avenue North, running from Broadway North crossing Church Street, and further out, the defendant J. C. Napier, is the owner of a certain house and lot located at the corner of Eighteenth Avenue North, and Church Street, upon which lot said defendant Napier, has a water connection and a yard hydrant, the defendant, Napier, carelessly and negligently allowed said hydrant to stand open from which a large quantity of water streamed and ran down across the sidewalk on Eighteenth Avenue North, near its intersection with Church Street, said defendant, City of Nashville carelessly and negligently allowed said water to run across and upon its said sidewalk on Eighteenth Avenue North, near Church Street, and to accumulate thereon, and freeze and further allowed an obstruction of snow to remain on said street.

"And on or about January the 3rd, 1928, plaintiff while in the exercise of ordinary care and caution for his own protection and safety was traveling along said Eighteenth Avenue North, not knowing of the dangerous condition of said street, and on account of the careless, unlawful and negligent conduct of the defendants in allowing said street or sidewalk to become obstructed to such an extent that it was dangerous to the public.  Plaintiff walked upon said ice and snow upon said Street without knowing that the ice was on the street, and he was caused thereby to slip and fall down from the effects of which he sustained the following serious and permanent injuries to-wit:

"His left arm was broken at the elbow, the bones and ligaments thereof were broken and fractured from the effects of which he suffered the greatest physical pain and mental anguish, incurred expense for medicine and doctor bill, and lost

much time from his work, and he alleges his injuries are permanent all on account of the gross and inexcusable negligence and carelessness of the defendant J. C. Napier, in allowing said hydrant to stand open and to run in full force across his yard, and on account of the negligence of the defendant, City of Nashville, in allowing said water to run upon said street and accumulate upon the sidewalk or street and to freeze thereon, and to remain for an unreasonable length of time thereby causing plaintiff to be injured as aforesaid.''

The City was thus charged with violation of duty to keep its sidewalks in a reasonably safe condition for the use of the traveling public, and to prevent injuries to persons who may, lawfully use them in traveling from one place in the City to another.

At the close of the trial a non-suit was taken as to the defendant J. C. Napier.

On January 13, 1928, a notice in writing was issued by the plaintiff and was served on the Mayor of the City of Nashville. In this notice the place of injury was described as ''at the northwest corner of Church Street and Eighteenth Avenue, North, Nashville, Tennessee, on the sidewalk.'' One ground of a motion of the City for a directed verdict was that this notice (which was, under Chapter 55 of the Public Acts of 1913, essential to the right to sue) was insufficient for failure to point out the precise place where the alleged defective condition of the sidewalk existed. The accident occurred at a place on the sidewalk on Eighteenth Avenue about twenty-five to thirty feet from the corner of Church Street. The undisputed evidence is that there was only one hydrant on the lot near the sidewalk on the northwest corner of the two streets. In the notice it was stated that the plaintiff was injured by slipping down upon the sidewalk which at the time was covered with ice and snow; that the ice was formed on the sidewalk ''as the result of a city hydrant at the yard being left open, and a stream of water poured down and ran across the sidewalk.''

Chapter 55 of the Public Acts of 1913 bars any suit against any municipal corporation on account of injuries received by person or property on account of the negligent condition of any street, alley, sidewalk, or highway of such municipality, unless within ninety days after such injury to the person or property has been inflicted a written notice shall be served upon the Mayor of said municipality stating the time and place where said injury was received and the general nature of injury inflicted. It is only when the injury results from some wrongful act done by the City itself, that the notice is not necessary. Hilson v. Memphis, 142 Tenn., 630, 221 S. W., 851.

In City of Knoxville v. Fielding, 153 Tenn., 586, 285 S. W., 47, the rule was re-stated, upon review of the many Tennessee decisions, that this statute must be strictly construed; that the rigid application of it cannot be justified except upon the ground that originally the law forbade a recovery, and that the legislature, which could take away the remedy, has annexed as a condition precedent to the right of recovery, the requirement of notice, and made mandatory a statement in the notice showing with precision the time, place and nature of the injury. In that case the right to recover was denied by the court because there was a variance of ten days between the date of the injury as given in the notice and the date when it actually occurred.

In Sneed v. City of Memphis, 6 Tenn. App., 1, recovery was denied because the notice was insufficient, describing the injury as occurring on Engle Avenue in the City of Memphis, as a point on said Avenue between White and Castex Streets,—the distance on Engle Avenue between said streets being 655¼ feet and the notice failing to show whether the accident occurred on the north or south side of the Avenue, or to describe any fixed object, such as a tree or bridge or any person's lot or home, by which the place could be identified. There was thus a large area within which the injury could have been sustained and the place was not specified with any reasonable precision.

The purpose of the statute requiring notice as a condition precedent to recovery, is to enable the officers of the city, being men of common understanding and intelligence, by the exercise of reasonable diligence, and without other information from the plaintiff, to find the exact place where the damage was sustained; and to investigate the matter while it is fresh, before witnesses had moved away or been forgotten; to learn the extent of the injury, the cause thereof and whether or not there is municipal liability. It is generally held that to be legally sufficient the description of the place of the accident must be so definite as to enable the interested parties to identify it from the notice itself; and that when parol evidence is required to determine both the place and the nature of the defect, a reasonable notice has not been given. Carr v. Ashland, 62 N. H., 665; Harribeau v. Detroit, 110 N. W., 512; Larkin v. Boston, 128 Mass., 521; Benson v. City of Madison, 101 Wis., 312, 77 N. W., 161; Rogers v. Shirley, 74 Me., 144.

The leading cases upon sufficiency of description of the place are reviewed in the opinion prepared by Judge Owen in Sneed v. City of Memphis, supra. An examination of these cases reveals such indefiniteness of location in each notice that it could not be held that the governing statute had been complied with. The description there went no further than to specify that the accident oc-

curred somewhere in a long block on a street or at or near the intersection of two streets without specifying at or near which of the four corners the accident occurred. In the notice here in question the place is given as at the northwest corner of the two streets but on which of the two streets it does not state. But it goes further on to specify that the ice was formed on the sidewalk from water coming from "a city hydrant at the yard." We are of the opinion that a man of reasonable intelligence, exercising proper diligence, going to the northwest corner of Church Street and Eighteenth Avenue North would immediately find the hydrant in a yard on either street, if it was there, and conclude that the ice was formed on a sidewalk on which the yard abutted and very near to the hydrant. Therefore we do not think that the notice was so indefinite in describing the place of injury as to be insufficient. There is substantial evidence that the plaintiff Peter Nevins, a colored man about sixty-two years of age and a tinner by trade, while walking along the sidewalk on Eighteenth Avenue North near Church Street came to a point where a hydrant stood at the edge of a yard by the sidewalk and slipped and fell on a thick coating of ice which had been formed around the roots of a sycamore tree raising the pavement a little above the ordinary level; that the ice was covered by a thin coating of snow so that it was not obvious to the traveler; that it was a sloping pavement; and that the ice had been formed from water which had run on to the pavement from the hydrant which had been left open. But these facts alone would not render the city liable. It must appear that the city was negligent in allowing the sidewalk to remain in such condition and that the city had either actual or constructive knowledge or notice of the existence of it as a nuisance, and in violation of a duty which the city owed to the public.

A nuisance "in legal parlance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." 20 R. C. L., 380, section 1.

Anything which renders a public highway unsafe for travelers thereon is a nuisance; and if a municipality permits its streets to get so out of repair or obstructed as to become a public nuisance it is liable to indictment. Municipal corporations "are under the absolute duty of exercising reasonable care to the end that their streets and sidewalks are kept free from nuisances and safe for the public travel." These principles have been recognized and applied in numerous Tennessee cases that are cited in the opinion of Presiding Judge Faw in Yarbrough v. L. & N. Railroad Co., 11 Tenn. App., 456. The universal rule is set forth in Chicago v. Robbins, 67 U. S., 418, 17 L. Ed., 298, as follows: "It is well settled that a

municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damage sustained.''

As to failure to remove snow or ice so long as they exist in their natural state, the general rule 'is that a municipality is not liable. 43 C. J., 1022; White on Negligence of Municipal Corporations, sec. 500. But in many cases it is held that where the condition of the sidewalk is due to some local cause affecting only a particular place rather than to conditions prevalent general, and may be remedied by the exercise of reasonable diligence, the municipality will be liable. Such local cause is an artificial one, combined with the natural cause. In Reedy v. St. Louis Brewing Association (Mo. Sup. Ct.), 61 S. W., 859, 53 L. R. A., 805, it appeared that the plaintiff slipped and fell on ice on a public sidewalk. The abutting property owner had suffered the ice to form by letting water from the spouts and gutters of its building to flow upon the sidewalk in freezing weather. The Supreme Court of Missouri said:

''The reasons which except slippery ice on a sidewalk from the category of dangerous obstructions for which a city may be liable, do not exist in this case. The water which was frozen here did not fall in rain or snow from the clouds, the city was not confronted with a thousand miles of ice-covered sidewalks to look after, nor were the people using the sidewalk at this point admonished by the general conditions surrounding them that ice was to be expected. The weather was dry, clear, and cold. There was ice at that point for a distance of about 15 feet, but not elsewhere. That the condition was dangerous is demonstrated by the plaintiff's fall; that the danger could have been removed with little labor or expense is beyond question. Therefore the city is not excused as it is when its powers are overcome by nature covering the face of the earth with ice and snow.''

As it is the duty of the municipality to abate nuisances that might become dangerous, there is no sound reason why it should be exempt from duty to remove, or cause to be removed, from a public sidewalk an unusual accumulation of ice that had been formed during very cold weather from water allowed to escape from a nearby hydrant. If it had notice, actual or constructive, of the existence of such ice and failed to remove it within a reasonable time, it was guilty of negligence for which it became liable. If the condition existed long enough to raise a presumption of notice to the corporation, it is liable as if it had actual notice. White on Negligence of Municipal Corporations, section 512. Constructive notice is

such knowledge as a prudent person would acquire by the exercise of reasonable diligence; and it must be acquired a sufficient time prior to the accident to enable the municipality to repair the defect. McQuillan on Municipal Corporations (2 Ed.), section 2996; 43 C. J., 1025; Poole v. Jackson, 93 Tenn., 62, 23 S. W., 57; Franklin v. House, 104 Tenn., 1, 55 S. W., 153. Except where the evidence is legally insufficient, or the facts are undisputed and but one inference can be reasonably drawn from them, it is ordinarily a question for the jury whether, under all the circumstances, the municipality had notice, either actual or constructive, of the particular defect or obstruction. 43 C. J., 1046, 1288.

The appellate court can only consider and appraise the evidence tending most strongly to support the verdict and determine whether or not such evidence, with all reasonable deductions therefrom, is of sufficient substance as a basis for the verdict and judgment.

The plaintiff did not know of the condition of the sidewalk where he fell. On December 31, 1927, after a few days of warm weather, a sudden and extensive change in temperature occurred, the lowest temperature being eight degrees above zero instead of fifty-three degrees on the preceding day. On January 1, 1928, the minimum temperature was two degrees above zero, the maximum, eight degrees; on January 2nd, minimum, zero, maximum thirteen degrees above zero. On January 3rd, the day of the accident to plaintiff, the minimum was three degrees above zero, the maximum twenty. On January 1st, there was a snowfall of one-tenth of one inch; on January 2nd and 3rd, no snowfall.

The duty of the municipality to use ordinary care in keeping its streets in a safe condition for public travel involves the inspection of defects that are the natural and ordinary result of climatic influences as well as use. 13 R. C. L., 348. This rule applies not to conditions resulting from the ordinary course of nature, the formation of ice from rain or melting snow, but from a local cause which may be remedied by the exercise of reasonable diligence. The rule of implied notice, or presumption of notice or knowledge, applies where there is evidence of the existence of the nuisance, or dangerous defect, so long that, even though it was not seen, it should have been seen and remedied. 13 R. C. L., 340; 43 C. J., 1046, and cases cited; Poole v. Jackson, supra; Hudkins v. Martin, 7 Hig., 547. This rule of liability is additional to the rule applying when an officer of a municipality has actual notice or knowledge. The case of Corey v. Ann Arbor, 124 Mich., 134, 82 N. W., 804, is cited with confidence by counsel for the City, on the ground that it was there held that a city is not liable for injuries sustained by one who slipped upon a walk covered by ice, due to the fall of water from a hydrant in the yard of a citizen, where the walk had

been in such condition but three days and the city had no notice of the defect, which was covered by a recent fall of snow. It was not shown in that case that any officer of the city had been along the street during such time, or that such condition was a matter of public talk; that the ice on the pavement was smooth and formed no ridge; that the hydrant had not been previously left open; and that the plaintiff lived near the place. Upon the facts of that case it was held that there was not shown a condition of affairs so notorious that a jury might infer notice to the corporation. A case more apposite to the case before us is Corbett v. City of Troy, 6 N. Y. S., 381. That was a case of a flow of water from a hydrant upon the sidewalk, which had continued for sometime, forming at intervals layers of ice; and it was held that the city had constructive notice of the escape of the water and of its flow over the sidewalk. The plaintiff was injured on February 22nd, by slipping on ice formed from water from the hydrant. Prior to the 20th there were rains and on the 16th and 17th was freezing weather. On the 18th and 19th the temperature was above freezing and there was steady rain on the 19th. During the 20th it grew cold and snowed on the 21st. The court said:

"It seems impossible that the heavy rain on the 13th, producing even a freshet, and with the changeable weather afterwards, and a steady rain on the 19th, that the ice on which the plaintiff fell could have been on the sidewalk prior to the 20th; but on the other hand the hydrant is shown to have been leaking during the winter; and therefore, although this ice may have existed but a few days, yet the jury might have been justified in finding negligence in the city in permitting an escape of water upon the sidewalk which would inevitably cause ice as soon as the weather became cold. This is not a case where the ice came from one of the natural causes, such as the freezing of rain or sleet. Here an escape of water was permitted during the winter. It might be harmless during warm winter weather but would certainly cause a dangerous place when the temperature would be below 32 degrees. There was constructive notice of the escape of this water, and of its flowing on the sidewalk, and knowing that a cold night might make this a cause of peril, the city might justly be found guilty of negligence by the jury." ·

There is evidence that the sidewalk at the place in question was frequently covered with ice from water flowing from the hydrant, prior to the accident to the plaintiff; that during freezing weather the water was allowed to run, would flow over the sidewalk and freeze, and sometimes form a sheet of ice twenty-five feet long; and that pedestrians would have to walk in the street. The water

was allowed to run to keep it from freezing in the hydrant. The ice on the sidewalk was one inch thick, or more. The surface was rough and uneven.

There is no evidence of actual knowledge of this condition on the part of any officer or employee of the city, except what might be inferred from the testimony of a colored woman who lived on the premises where the hydrant stood—that she had seen policemen passing along there. It is insisted that knowledge by a policeman would not be imputed to the municipal corporation, it not being the duty of a policeman to abate nuisances or to keep the streets and sidewalks in proper condition. This is not the rule in Tennessee. In Nashville v. Patton, 2 Higgins, 515, it was ruled that notice to a policeman whose duty it is to report the fact, that a dead animal is in the street, to the scavenger department, is notice to the city. In that case it appeared that a dead horse was allowed to remain for twenty-six hours on a street, and the city was held liable for negligence in failing to have the carcass removed, to persons injured by the overturning of their buggy when the horse became frightened at the carcass. In the case before us the trial judge instructed the jury that constructive, or implied, notice is where the defect or unsafe condition of the street or pavement had existed for such a length of time prior to the accident that the city through its officers, including policemen, if exercising an ordinary degree of care, ought to have been aware of such defects or unsafe condition. This instruction was not based alone on notice to a policeman, but on the duty of any officer of the city to know of the defect or dangerous place, if it had existed and was obvious long enough for such officer, in the exercise of ordinary care, to see it. The instruction was correct.

Furthermore, we take judicial notice of the Charter of the City of Nashville, under section 78 thereof (Chapter 125 of the Private Acts of 1923). Section 69 thereof makes it the duty of a policeman to protect the rights of persons and property, guard the public health, and see that nuisances are removed. These provisions operate necessarily to impute to the municipality a knowledge of the dangerous condition of a sidewalk caused by water improperly running thereon from a hydrant and freezing.

In view of these rules the jury could consider the fact that water had for sometime been allowed to run on the pavement from the hydrant in the winter season, when at any time it might freeze from a cold temperature occurring. Such a temperature—many degrees below the freezing point—existed three days before the accident, and it was even lower on the next day. Considering all these facts and circumstances, the jurors, as reasonable men, were within their province in concluding that a city policeman, or other

officer, had ample time to know of the danger to travelers and to have it removed. This was a question of fact, and the jury has determined it upon substantial evidence. The finding of negligence on the part of the city is therefore conclusive upon this court. The trial judge did not err in overruling the motion for peremptory instruction to find for the defendant.

It is insisted that the court erred in refusing upon request to charge the jury as follows:

"I further charge you that a municipality is not bound, under all circumstances to keep sidewalks free from ice; and a municipality is not liable for injuries resulting merely from the slippery condition of a sidewalk caused by smooth ice or snow or water."

Such instruction was not warranted by the pleading or the evidence. In the declaration it was charged that the ice on which plaintiff slipped was negligently allowed to accumulate as an obstruction and from the flow of water from the hydrant. The action was not grounded upon the existence of smooth ice or snow formed in the ordinary course of nature. It was plain to the jury that the cause of action was negligence in failing to abate a condition resulting from the flow of water from the hydrant onto the pavement.

Another request was as follows:

"I charge you that if a defect in a street is a latent defect, not visible to ordinary inspection an implied notice of the defect will not be presumed and will not be charged against the city until something occurs from which notice may be presumed or implied."

Such instruction had already been substantially given in the charge in the definition of constructive notice, where the defect or unsafe condition of the street or pavement had existed for such a length of time prior to the accident that the City through its officers, including policemen, if exercising an ordinary degree of care, ought to have been aware of such defects or unsafe condition. Furthermore, the instruction requested would have too greatly limited the rule of constructive notice. This applies also to another request as follows:

"I charge you that the fact that the city knows of a freeze after a thaw does not include notice of a particular damage at any point."

Such instruction would have been inadequate, in view of the testimony that the water had for a considerable time been flowing on the sidewalk from the hydrant; and it would ignore the duty of the city to anticipate that the water might freeze and form a dangerous place on the sidewalk.

Complaint is made of instructions given to the jury as follows:

"Then again when you come to determine what would be a reasonable time in which to remove said ice and snow so as to make said sidewalk reasonably safe, you should take into consideration the amount of labor necessary to perform this work in connection with the territory comprising the city of Nashville, together with the number of street cleaners that it should have employed in the exercise of ordinary care."

In our opinion this instruction was sound and embodied a correct rule of law. Objection seems to be made to the reference to snow therein. There is evidence that the ice was covered with a thin sheet of snow which obscured the ice so that the traveler did not know that the ice was underneath.

It is insisted that the court erred in permitting the witness O'Leary, to testify that he had seen ice on the sidewalk before all winter up to the time of the accident. There was no error in admitting this testimony, for it referred to ice formed by water flowing from the hydrant, and it bore upon the question whether or not the city had had notice either actual or implied, of the existence of the danger to travelers.

It was proper to admit testimony as to the existence of such ice at this place at time within a reasonable period prior to the day of the accident, as bearing upon this question of notice. For this reason it was not improper for the trial judge to instruct the jury, as he did, that it was proper to show that ice had formed at that place from that cause shortly prior to the day of the accident, because they might or might not conclude that if it had let the ice stay there until it melted along in December, maybe it would let that ice that was formed on the 3rd of January stay there until it melted. He then told the jury that that was for them to determine; that they had a right to draw the natural and reasonable conclusion from the facts that had been proven, but only those facts which were shown to have existed immediately prior to the 3rd of January and not to any situation that existed thereafter.

It is insisted that the amount awarded by the jury is so excessive as to show passion, prejudice and caprice. Certainly there were no facts shown which would tend to inflame the minds of the jury against the City of Nashville. The plaintiff was seriously injured by the fall and it is not contended that he was guilty of contributory negligence. He was even a stranger to that part of the city. He suffered a fracture at the elbow, described by his physician as "transverse fracture of left olecranon process of ulna." Plaintiff testified that he suffered more than he ever suffered from any other injury, and he had had a thigh broken, a hand broken and a hand dislocated. He said that it was fully six months before he could use his arm at all. To a certain extent he had lost the use

of this arm up to the time of the trial, which was more than a year after the accident. He was a tinner by trade earning sixty-five cents an hour. In view of these facts this court will not disturb this verdict. The law prescribes no exact standard by which the compensation to be awarded for personal injuries shall be awarded. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Therefore the appellate court will not attempt to substitute its judgment for that of the jury. 8 R. C. L., 673; Davidson Benedict Co. v. Severson, 109 Tenn., 616, 72 S. W., 967; Saucier v. Roberts, 2 Tenn. App., 211.

It results that all of the assignments of error are overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered in this court in favor of the defendant in error against the City of Nashville for the sum of $1000, with interest from the date of the judgment in the Circuit Court, and all costs of this cause. The costs of the appeal in error will also be adjudged against the surety on the appeal bond.

Owen and Crownover, JJ., concur.