# WILLIAMS v. CROSS et al.

Eastern Section.   February, 1932.

Petition for Certiorari denied by Supreme Court, May, 1932.

E. G. Foster, of Huntsville, for appellant.
Charles H. Davis, of Oneida, for appellees.

SNODGRASS, J.   The chancellor's opinion appearing as part of the decree is as follows:

"This suit is to enjoin defendants who constitute the Board of Education, etc., controlling the Huntsville High School, from permitting the use of a toilet erected on the school grounds and to have said toilet removed.

"Among other things it is alleged that the erection and use of said toilet within a few inches of complainant's vacant lot has totally destroyed complainant's property by causing bad smells, noxious

vapors, and unhealthy conditions. Much proof has been taken on both sides. I have come to the conclusion that the following facts have been established:

"That the toilet in question was erected within less than two feet of the complainant's lot of about three-fourths of an acre. That this lot produces some hay and that after the hay is cut complainant sometimes pastures his milch cow in the lot.

"That at times the condition of said toilet on the inside is unsightly and repulsive and disagreeable odor is present inside of said building. This condition does not obtain all the time as the janitor cleans it up and uses lime. That the toilet was constructed according to approved methods. That just on the inside of complainant's fence opposite said toilet and from two to three feet from the same he caused a trench to be dug from thirty-two inches to forty-four inches deep and from two and one-half feet to three feet wide. That at this depth stone was found which inclined toward the west. That when the parties digging the trench came near the rock at the bottom they encountered a bad odor and the ground was wet. These conditions evidently came from the toilet in question.

"Considerable proof was taken some of which tended to show that the branch running through one of the complainant's lots southwest of the toilet has become contaminated by the maintenance of said toilet. There is no proof that the water was analyzed and the excavation made on complainant's lot was not close enough to show whether the deposits at the toilet reached the ditch which carries the water from complainant's lot north of the highway to the lot below, furthermore there is no allegation in the bill to the effect that complainant's water has been polluted and therefore there is no issue on that point. The proof fails to show that the odor from the toilet has in any way affected complainants or been offensive to any one not on the school property. In other words no one has testified that they detected the odor from the toilet, except while they were on the school property. Should complainant build a dwelling on this lot (and it is a suitable lot for buildings), it might be that complainant would have the right to enjoin the use of said toilet.

"I am therefore of the opinion that the complainant's bill should be dismissed."

It was accordingly ordered, adjudged, and decreed by the court that the complainant's bill be, and the same was, dismissed in accordance with the above finding of fact, and that he and his securities on the cost bond pay all the costs of the cause for which execution was awarded. And the injunction that had theretofore been awarded was canceled, set aside, and for nothing held.

It is proper to state that the injunction in its original form had been modified on motion so as to permit the use of the privy pending the litigation but not so as to injure the complainant; upon condition

of the execution of a bond in the sum of $500, which bond was made and filed in the cause.

As indicated, an appeal was made, granted, and perfected to this court by the complainant, who makes one assignment of error supported by four reasons assigned as follows:

"I. The Court erred in dismissing complainant's bill and taxing him with the costs for the following reasons, each of which are assigned as an error to-wit:

"1. Because the Court found in his written findings of fact that the toilet in question was erected within less than two feet of complainant's land, and that at times the condition of said toilet on the inside is unsightly and repulsive and disagreeable odors are present, which in law is conceded to be not only productive of serious discomfort but of general ill health and disease and is therefore removable as a nuisance.

"2. Because the Court found in his written findings of fact that on the inside of complainant's fence, opposite the toilet, and some two to three feet from the toilet complainant caused a trench to be dug some thirty-two to forty-four inches deep and from two and one-half to three feet wide, that at this depth stone was found which inclined to the west, draining the filth from the toilet on complainant's land and found that when the parties digging the trench on complainant's land came near the rock at the bottom they encountered a bad odor and the ground was wet and that these conditions came from the toilet in question, which findings established the filth from the toilet on complainant's property and established the toilet as a nuisance under our laws and under said findings the Chancellor should have removed said toilet as a nuisance and sustained complainant's bill instead of dismissing the bill and taxing complainant with the costs.

"3. Because the Court found in his written findings that some of the complainant's proof showed that the branch running through complainant's property southwest of the toilet had become contaminated by the maintenance of the toilet, and the Court evidently recognized that that produced a nuisance, but he refused to decree it a nuisance because he says in his written findings that 'there is no allegation in the bill to the effect that complainant's water had been polluted and therefore there is no issue on that point.'

"4. Because the Court found in his written findings that should complainant build a house on this lot, and he found it a suitable lot for building, that complainant would then have the right to enjoin the use of the toilet, thereby recognizing that the value of complainant's property for residence or business purposes was destroyed by a recognized nuisance then existing, which destroyed the property of complainant, but the Court refused to recognize the nuisance or remove or abate the same because no building was then on the property."

We are of opinion from an examination of the record that the chancellor should have sustained the bill and have granted the relief sought under the circumstances of this case. It is true that no purposeful injury was intended the plaintiff's property in the construction of the privy at the place last selected, and it may also be true that considering alone advantages to the high school property and its convenience, the location may be the most desirable for the high school. But this is not, nor should it be, the full compass of the inquiry.

The high school property, it appears, consists of some twenty-five acres and there are a number of places on its property where this privy might be constructed on its own property without a threat of injury to others, though possibly not as convenient or desirable as the place last selected, and for many years theretofore this privy, designed as a boys' privy, had been located some distance southeast of the main building to which place it had been removed from a location northwest; but it seems that on building a gymnasium some one hundred yards still east of said privy the defendant school authorities determined to change places and construct it at the location which brought about this lawsuit. They are undertaking to build and maintain it within a few inches of the line of complainant's fine building lot which adjoins the school property on the west and is described in the bill as follows:

"On the north by the Huntsville High School and W. H. Potter; on the south by the State Highway; on the east by the Huntsville

High School and on the west by the State Highway, containing from three-fourths to one acre of land, said land is about one hundred (100) feet, more or less, on the east and running back to a point on the west end; and this piece of land lies north of the State Highway and being the property that is completely destroyed by the action hereinafter set out. While the complainant owns land south of the State Highway he does not here put it in.''

While neither side has seen proper to aid us with a diagram of the situation and have left us to grope largely in an imagination as to what is the exact situation, we think the above roughly drawn sketch visualized from the proof will at least serve to rest the mind from its fruitless quest for a perfect verity of the entire situation.

The plan of the proposed house was, it seems, to face the school building, which would leave the offending privy practically in the front yard of any residence that might be constructed. A pit, some three feet deep and extending the length of some five holes above it, was designed as the receptacle of the urine and other of the excrement to be deposited in the pit, and when it was nearly full the plan was to remove it to another place. The place did become filthy and obnoxious odors did emit therefrom, but upon the employment of a janitor it was shown that by keeping the place scrubbed and cleaned up and by the use of lime the offensive odors were latterly kept down to a minimum, after the partial dissolution of the injunction, but it is manifest that the situation of the offensive structure greatly impaired, if it did not destroy, the value of the property as a residence lot. Moreover, experiments showed that the privy was situated west of an anticline which precipitated the drainage from this privy westward and onto the property of the complainant. A pit was dug down to the porous rock on complainant's property within some thirty-six inches of the pit used in the privy for the offal, and it was found to have already received such offensive drainage from which issued foul odors, manifestly a contribution from the offensive privy. This drainage, we think, will inevitably communicate with the branch on the property where his milk cow grazed and slaked her thirst.

While the chancellor did not think this insidious threat was sufficiently alleged in the pleadings, the bill does allege that:

''If they are allowed to maintain the same it totally destroyed the value of complainant's property hereinbefore described by causing bad smells, noxious vapors and unhealthy conditions which totally and completely destroy the value of your complainant's property, when said property is located in such condition as it, at the east and southeast end of said property lies in fine shape for a dwelling, the southeast part of said land raising to a point about level to that of the Huntsville High School, making a fine house site, but that a house

cannot be constructed thereon without coming within ten (10) feet or nearer of said toilet, that in addition said lot has fine shade trees thereon for a resident's lot, and would face said high school building and be a fine resident lot.''

Upon which, it was alleged, complainant had been and was then planning to build. We think that under the general statements of the bill any deleterious influence that might have rendered the privy a nuisance in the place and under the circumstances maintained might have been shown.

By section 6869 of Shannon's Code it is provided:

''It is a public nuisance:

''(1) Offal.—To cause or suffer any offal, filth, or noisome substance to be collected or to remain in any place to the prejudice of others.''

''(3) To corrupt or render unwholesome or impure the water of any river, stream, or pond, to the injury or prejudice of others.''

In 20 Ruling Case Law, page 380, section 1, the meaning of ''nuisance'' is defined:

''The term 'nuisance' is derived from the French word 'nuise' which means to injure, hurt or harm. And in a broad sense it is true that a nuisance is anything that works an injury, harm or prejudice to an individual or the public. According to the definition given by Blackstone (3 Blackstone Com., 216), which has met with general approval, a nuisance is 'anything done to the hurt or annoyance of the lands, tenements or hereditaments of another.' A more comprehensive definition, however, must be adopted in order to include everything that is recognized by the law as a nuisance at the present day. The decisions establish that the term nuisance, in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.''

This comphehensive digest refers for its support to numerous authorities, and while it is said in section 5 following that in many cases the question whether a nuisance has been created depends on the degree of injury done; that the harm may be great or slight, and the determination of the rights of the complaining party and his remedy must necessarily depend on the varying circumstances of each case; that the injury must not be fanciful or imaginary, nor such as to result in a trifling annoyance, inconvience, or discomfort, which may affect those who possess too sensitive a nature or too fastidious a taste; and that the law is applied only to the normal man—the man of ordinary habits and ordinary sensibilities—and that it does not take cognizance of insensible and unsubstantial discomforts and inconveniences. It nevertheless is held that:

''The law will not permit one person with impunity to invade the premises of another by anything in the shape of a nuisance because the damage may not be appreciable. The law does not justify or

excuse any such invasion, be it ever so small, and allows the recovery of nominal damages at least as evidence of the plaintiff's right. Nor is it always necessary that the acts charged should have been habitual or periodical. Where a single act produces a continuing result, the offense may be complete without a recurrence to the act.''

We think the foregoing well-considered principles, when applied to the proof in this case, settle the issues in favor of the complainant. Locating the privy as they have, the foul and dangerous offal has already drained upon his land, where it will inevitably increase and spread through the pores or crevices of the sloping rock into the ditch and waters of the branch. It has already so polluted his land as that his use of it has been restricted and minimized and the damage, calculated to be serious, is not a matter of small moment or of any fanciful proparation or apprehension. Only the smell or noxious odors will, if any, come from the surface. But the offal is deposited in the natural drainage under the surface and from thence has come and will continue to come upon his land, with a serious threat, we think, of danger to his stock and cannot be considered as anything else but to his prejudice, in which circumstance we think it is immaterial whether it be caused upon the surface or under the surface in the natural drainage.

In view of the uses to which this land is capable of and intended to be devoted and of the ample range within the purview of the defendants which will or can be made to answer their purposes without injury to others, we think equity would require that the injunction be restored and made perpetual and that within a reasonable time, say within sixty days, the defendants be required to remove the toilet.

The assignments will therefore be sustained, at least to the accomplishment of this result, the decree of the chancellor reversed, and a decree will be entered here in accordance with this opinion and the case remanded to carry out the mandate. Defendants will pay the costs, and for such as have accrued in this court executions are awarded from this court, the remaining costs will be collected in the court below.

Portrum and Thompson, JJ., concur.