## Adams v. Hamilton Carhartt Overall Co. et al.

March 2, 1943.

Robert R. Friend and Ben H. Scott for appellant.

Shumate & Shumate and John W. Walker for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The Hamilton Carhartt Overall Company operates a plant in Irvine, Kentucky, and owns a residence near the outskirts of that small city which is occupied by Hamilton Carhartt, Jr., and his family. Mr. Carhartt is the general manager and vice president of the plant, and his son, Jack, also works there. Dewey Adams and his wife reside in a dwelling which they erected on property adjoining the rear of the property where the Carhartts reside. The Adamses keep three bird dogs on their premises. According to the testimony of the Carhartts, these dogs bark a great deal. They say the dogs bark daily from around five o'clock to seven-thirty in the morning, for about at hour at noon, for about two hours late in the afternoon, and frequently during the night. Mr. Carhartt said that he had made several unsuccessful attempts to get Mr. Adams to do something about the dogs prior to the time he instituted this proceeding wherein he sought the following relief:

> "Wherefore, the plaintiffs pray for an injunction compelling the defendant to remove said pen

and said dogs; that the defendant be perpetually enjoined from maintaining said barking dogs on his premises and in close proximity to the property of the plaintiffs, to the end that the barking of said dogs will not annoy the plaintiffs; for judgment for $100.00; for costs and all proper relief."

The trial resulted in a judgment denying damages, but under which Mr. Adams was "* * * permanently enjoined from maintaining upon his premises at night and during the early morning hours, being his place of residence near Irvine, Kentucky, when barking, the three bird dogs mentioned in the evidence, namely: an Irish Setter, a Pointer and an English Setter, and is directed and enjoined to remove said dogs from said premises. * * *" This appeal seeks a reversal of that judgment.

We would have less difficulty in disposing of this case were there not evidence of friction between the Adams and Carhartt families over a period of two or three years. Mrs. Adams was formerly employed in the office of the Overall Company, and seems to have resigned her position after the younger Carhartt had made some remarks to her, presumably about the dogs. Prior to the complaints about the dogs, the Carhartts had complained of chickens and hogs kept by the Adamses, and also about a sewer. There is also an indication that a dog owned by the Carhartts had caused the Adamses some trouble. The Carhartts sought to show also that Mr. Adams had threatened to open a dog kennel on his premises. Mr. Carhartt failed utterly to support his statement that he thought that the dogs "were purposely agitated." Furthermore, his statements to the effect that the dogs were kept in a pen some 12 by 15 feet in size, when in fact they were kept in pens approximately 30 by 50 feet; and that the back of his house was about 100 feet from the pen where the dogs were confined, while the residence of a Mr. Marlow, which was shown to be nearer the place where the dogs were kept than the Carhartt home, was 250 feet therefrom, are little short of absurd. But, aside from all this, there is the positive testimony of the Carhartts that the dogs bark every day and to such an extent as to disturb their rest and to infringe upon the enjoyment of their home. While several other persons in the neighborhood testified about the barking of the dogs, none of them said that they were disturbed thereby, nor did they refer to the barking to

any such extent as testified to by the Carhartts. A native of Estill County would not likely have instituted such a suit. There was testimony, of course, for the Adamses that the dogs were well kept and well fed, and that they barked no more than other bird dogs.

This brings us to the consideration of the law applicable to this particular type of nuisance. We have been unable to find a comparable case in this jurisdiction and, indeed, have found very few similar cases in other jurisdictions. Probably the scarcity of such cases may be attributed to the fact that many people keep dogs, and, realizing that, where there is a dog, sooner or later there will be a bark, they have decided to live and let live. Then, too, it is axiomatic that a dog is a man's best friend, though it has been put aptly that the converse is equally true. Furthermore, there has been, in all probability, a recognition upon the part of the Bar of this country that courts of equity should not be called upon to settle all cat and dog squabbles; but it is common knowledge that there have been and are instances where the barking of a single dog has disturbed the peace and quiet of the surrounding neighbors of its keeper.

We have found only two inferior court cases where the barking of one dog has been held to be a nuisance; Hechelman v. Kindt, 1911, 22 Pa. Dist. 791, 40 Pa. Co. Ct. R. 277, referred to in the Annotation in 79 A. L. R. 1054, 1068, following Krebs v. Hermann, 90 Colo. 61, 6 P. (2d) 907, 79 A. L. R. 1054, and Marks v. Luce, 1 Orleans App. 107, referred to in Talbot v. Stiles, La. App., 189 So. 469, 471. The following statement is from the Pennsylvania case, supra:

> "It has been held that a pack of dogs may create a nuisance, and it follows that a constituent part of a pack, to wit, one dog, if sufficiently persistent, may make as much noise as a dozen barking seriatim, and while a court of equity should not be troubled with cat and dog cases, we are constrained to hold that a chancellor, in a proper case (and this is one), should decree that the owner of the dog should so care for it (him or her) that it should not bark and yelp except in cases of burglary or fire."

The Krebs v. Hermann case, supra, dealt with a situation where from 40 to 80 dogs were kept in a kennel and the charge was that the offensive odors there-

from, as well as the barking of the dogs in the night-time, constituted a nuisance. The relief sought by a single complainant and his family was granted. Other kennel cases wherein similar relief was sought and granted, though in most of them several neighbors complained, are: State ex rel. v. Stillwell, 114 Kan. 808, 220 P. 1058; Herring v. Wilton, 106 Va. 171, 55 S. E. 546, 7 L. R. A., N. S., 349, 117 Am. St. Rep. 997, 10 Ann. Cas. 66; Singer v. James, 130 Md. 382, 100 A. 642 (This case involved the keeping of a number of hogs, dogs, ducks, chickens, geese and guineas); Knowles v. Central Allapattae Properties, Inc., 145 Fla. 123, 198 So. 819, 823; Scudder v. Town of Greenwich, 127 Conn. 71, 14 A. (2d) 728; Murphy v. Hitchcock, 150 Misc. 36, 268 N. Y. S. 385; and Talbot v. Stiles, supra.

When we stop to consider that a nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable, we can see the logic in the foregoing holdings. While, as we have pointed out, most of the dog barking cases we have been able to find have involved a large number of dogs, still, if a few dogs bark to such an extent as to make the ordinary occupation of one's property physically uncomfortable, we fail to see how the same reasoning would not apply. It is the disturbance and not the number of dogs to which the test must be applied. Here we have the positive testimony of the Carhartts that the dogs kept by the Adamses break and disturb their rest and peace and make the use of their property physically uncomfortable. We can not escape the conclusion, therefore, that they are entitled to relief. That relief is to have the nuisance abated. We have noted that the judgment directed that the Adamses be enjoined from keeping the dogs on their premises at night and during the early morning "when barking." If the dogs can be trained, housed and kept in such a manner that their barking will not constitute a nuisance, they will have complied with the judgment, and it will not be necessary for them to remove them permanently from their premises.

Judgment affirmed.