# THOMAS F. WILSON et ux. v. FARMERS CHEMICAL ASSOCIATION, INC. —444 S.W.2d 185.

Eastern Section. February 20, 1969.

Certiorari Denied by Supreme Court August 4, 1969.

Witt, Gaither, Abernathy & Wilson, James J. Griffiss, Chattanooga, for Thomas F. Wilson and wife.

MacFarland & Reed, Lebanon, and Chambliss, Hodge, Bahner & Crawford, Chattanooga, for Farmers Chemical Ass'n, Inc.

McAMIS, P.J.   Thomas F. Wilson and wife as the owners of a partially developed residential sub-division filed the bill in this case against Farmers Chemical Association, Inc., a manufacturer of fertilizers and the ingredients of TNT, to recover damages and to enjoin an alleged temporary nuisance which complainants charge was caused by the pollution of the atmosphere and the waters of Waconda Bay, an arm of Chicamauga Lake in Hamilton County.

On an answer denying the material allegations of the bill and voluminous proof in the form of depositions the Chancellor found that defendant was in fact maintaining a temporary nuisance when the bill was filed November 16, 1965, but that due to improvements in its manufacturing processes defendant's activities no longer amounted to a nuisance.

The Chancellor found, however, that before these improvements were made complainants had suffered the following damages: $36,436.00 representing diminution in the sale price of lots already sold and $15,000.00 damages as riparian owners, resulting from siltation of the Bay which complainants, under their contract with Tennessee Valley Authority, are required to dredge and remove.

Complainants contend that for this latter item the Chancellor should have allowed $28,000.00 and erred in

refusing to allow recovery of $25,447.63 as interest on borrowed funds which complainants were unable to repay because of their inability to market lots due to defendant's activities.

Both parties have appealed and assigned errors challenging the Chancellor's holding adverse to their respective contentions. We consider first the assignments of the defendant Farmers Chemical Association, Inc.

The first assignment that the Chancellor erred in finding defendant had maintained a temporary nuisance in the pollution of the atmosphere and the waters of Waconda Bay is overruled. The evidence does not preponderate against the Chancellor's findings on this issue. These findings are set forth in the Chancellor's opinion, from which we quote:

"The Court finds that the defendant corporation has maintained and continues to maintain a nuisance in its manufacturing operations which has caused substantial injury to the complainants. The defendant has polluted the air over the complainants' property since the defendant began operating and this pollution has continued to the time of trial. The pollution consists of soot or 'particulates', ammonia, oxides and other compounds of nitrogen and other chemicals. These pollutants have seriously impaired the usable value of complainants' property. Likewise, the defendant has polluted and continues to pollute the waters of Wyconda Bay by discharging through a drainage ditch running from its plant to the Bay huge quantities of water which contain ammonia, oxides of nitrogen and other poisonous chemicals which have caused numerous kills of thousands of fish, the decaying of which has fouled the air over complainants'

property and fouled the waters of the Bay, thereby rendering it unfit for normal boating and swimming purposes. This pollution of the waters of the Bay has likewise caused substantial injury to the usable value of complainants' property."

The record shows complainants' property adjoins Waconda Bay and that it has been partially developed by the construction of streets and necessary facilities for a high class subdivision, entailing an expenditure, including the cost of the land, of more than $500,000.00. There can be little doubt that, due to defendant's activities, complainants have been seriously handicapped in selling lots and as a result of these difficulties and the reluctance of buyers to purchase and develop lots complainants have deferred improving a considerable portion of their lands.

The Chancellor found that, due to defendant's activities, on the lots actually sold complainants were compelled to reduce the price by 22.4% and, as a result, sustained a loss of $36,436.00. We concur in that finding. It is thus apparent complainants have been denied the beneficial use of their property, a commonly accepted ingredient of the term "nuisance".

"A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. Adams v. Hamilton Carhartt Overall Co., 293 Ky. 443, 169 S.W.2d 294. In City of Nashville v. Nevin, 12 Tenn. App. 366, it was said that a nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property. See also Williams v. Cross, 16 Tenn.App. 454, 459, 65 S.W.2d 198.

"What is a reasonable use of one's property and whether a particular use is an unreasonable invasion of another's use and enjoyment of his property cannot be determined by exact rules, but must necessarily depend upon the circumstances of each case, such as locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like. See Clinic & Hospital, Inc. v. McConnell, 241 Mo.App. 223, 236 S.W.2d 384, 23 A.L.R.2d 1278; Restatement, Torts, Secs. 822, 831, pp. 214, 265." Caldwell v. Knox Concrete Products, 54 Tenn. App. 393, 391 S.W.2d 5.

In that case incessant and disturbing noises were found to constitute a nuisance. In Hendrix v. City of Maryville, 58 Tenn. App. 457, 431 S.W.2d 292 a city dump offensive to sight and smell was held to constitute a nuisance and, similarly, in Hagaman v. Slaughter, 49 Tenn.App. 338, 354 S.W.2d 818, a junk yard where rats and mosquitos were allowed to converge and breed, found to be a health hazard, was held to be a nuisance. So here, the offensive odor and sight of decaying fish and the pollution of the atmosphere with dirty and odorous fallout, resulting in heavy damage to property, cannot with reason be said to be less than a nuisance.

Defendant cannot escape the charge that, as to the dead fish, there was no nuisance because the escape of the lethal chemicals into the waters of the Bay was not continuous but happened only occasionally when due to accident chemicals escaped into the drainage ditch leading to the Bay. The proof shows that as many as seven or eight fish kills occurred over a period of about three years. Regardless of the cause of these "accidents" we

cannot say the Chancellor erred in his finding that defendant failed to so control its operations as to avoid serious discomfort and damage to its neighbors and that, therefore, its use of his property was not reasonable or proper.

■■ The element of motive or intent does not enter into the question of the existence of the nuisance. State v. James, 177 Tenn. 21, 145 S.W.2d 783. It is the use of property by the accused and whether reasonable or unreasonable and the effect of such use upon the health, safety and comfort of affected persons and damage to property rights which must be given predominant consideration.

■ "Every man or corporation must so use their own property as not to injure others." City of Nashville v. Nevin, 12 Tenn.App. 336. And see 39 Am.Jur. 296, Nuisances, Section 16.

■ Defendant next assigns as error the overruling of its objection to the testimony of G. M. Baker, a real estate appraiser.

The witness filed as an Exhibit to his testimony an estimate of the depreciation of complainants' property from January 1, 1963, about the time defendant began operations, and November 16, 1965, the date the bill was filed and concluded the property had depreciated in value as the result of contamination of the water and atmosphere and related adverse effects to the extent of $75,000.00. It appears this estimate was predicated on sales of similar property in the area during this period of time and the fact the witness was not living in the Chattanooga area during that time and was, therefore, not personally acquainted with real estate values during

these years goes to the weight rather than the competency of this testimony.

Defendant's Fourth and Fifth assignments are directed to the measure of damages adopted by the Chancellor. It is insisted the measure of damages in cases where the nuisance results in continuous or recurring injury to the plaintiff's property is the impairment of the use of the property until the nuisance is abated, to be arrived at by the lessening of the usable or rental value of the property.

█ This is the general rule. As said in City of Columbia v. Lentz, 39 Tenn. App. 350, 282 S.W.2d 787, 792:

"Where one's property is injured by a temporary, recurring nuisance he may recover from time to time for the impairment of the use and enjoyment of the property; and the measure of damages will *ordinarily* be the lessening of the rental or usable value of the property caused by the nuisance." (Italics ours)

Complainants had invested in 116 acres of land and the improvements placed thereon more than $500,000.00. They had bought the land and improved it for only one purpose, to sell lots and by so doing make a profit. If the land had any value as farm property or as camp sites or the like the record fails to reveal it. Certainly, its value or the value of its use for any purpose other than as a subdivision would not bear a reasonable relation to its cost. As the Chancellor said, to limit complainants to the loss of use in this situation would result in depriving them of any recovery.

█ Accordingly, the Chancellor found that between January 1, 1963, when the nuisance had its beginning and November 16, 1965, when suit was filed the value of com-

plainants' unsold property decreased by $73,000.00. In the absence of a better criterion the Chancellor allowed interest at 6% on this sum between the two dates amounting to $12,945.20. We cannot say this was error in view of the proof, not substantially disputed, that except for the nuisance complainant could have sold the remaining lots without difficulty.

■ While the aim of the law is certainty in the ascertainment of damages and an award of damages can never be based upon conjecture and speculation, where it is shown that damages have been sustained because of the defendant's fault mere uncertainty as to the amount will not prevent recovery if the evidence is of such certainty as the nature of the case permits and such as to lay a foundation enabling the triers of the facts to make a fair and reasonable assessment of damages. Anno. 78 A.L.R. 858; 22 Am.Jur. 44, Damages, Section 25.

Defendant's assignment that the Court erroneously allowed damages for silt alleged to have washed into the Bay and complainants' assignment that the award of $15,000.00 allowed by the Chancellor for this claim is inadequate will be jointly considered.

This issue was sharply contested with a mass of testimony on both sides. We cannot undertake here an analysis of all of this proof.

The record shows defendant's predecessor had acquired an easement some 4000 feet in length from complainants' predecessor in title for the purpose of disposing of water used for cooling in its manufacturing processes. In 1962 defendant acquired title to the plant which had been used during World War II and the Korean conflict for the manufacture of TNT. The water drawn from

the lake for cooling purposes in these operations was returned to the lake after being allowed to pass through certain settling basins.

When defendant took possession these basins were full of sediment. However, defendant continued to use them and daily allowed approximately 60,000,000 gallons of water to flow through the basins, thence over its easement above mentioned and into the lake. As a result channels were cut and some of these deposits were carried into the lake. After passing through these basins the water passed into a ditch which in 1962 a man could step across without difficulty. When the bill was filed the ditch had been widened as much as 20 feet due to crumbling of the banks and was also much deeper.

In 1962, in keeping with their contract with T.V.A. complainant had dredged the channel of Waconda Bay to the required level of 668 feet above sea level. After this suit was filed they engaged a contractor to make soundings in the Bay and submit a bid to dredge it again to the required depth. The contractor, a witness for complainants, submitted a bid of $28,000.00 to remove the silt from the Bay, excavate a place on complainants' land, place the silt in the excavation, cover it with 2 feet of dirt and then build a fence around the excavation. It is complainants' contention the Chancellor should have allowed a recovery in this amount and erred in reducing it to $15,000.00, while defendant contends no recovery should have been allowed for siltation of the Bay.

The Chancellor at first disallowed this claim entirely, holding complainants failed to carry the burden of proving the cause and source of the siltation. On complainants' petition to rehear, however, while finding that complain-

ants had exaggerated their claim the Chancellor concluded a recovery in the reduced amount of $15,000.00 should be allowed.

The record fairly shows the following: Defendant, as above mentioned, ran 60,000,000 gallons of water daily through the old settling basins causing the stream of water to cut channels through the basins and pick up silt. It then allowed this large stream of water to pass through the ditch without providing any protection from crumbling from the sides, resulting in cutting the ditch much wider as well as deeper. All of this material necessarily was carried by the process of washing into the Bay.

It is also shown without dispute that a certain amount of natural erosion always results from heavy rains and in the case of this particular watershed that numerous eroded areas are to be found. This eroded soil must also have found its way into the Bay. Both sources contributed to the siltation of the Bay. Our difficulty and no doubt that of the Chancellor has been in attempting to approximate that portion caused by the activities of defendant.

We have referred above to the rule permitting approximation of damages where the right of recovery is shown but the damages cannot be ascertained with precision. We think the rule is to be applied in respect to the claim of damages due to siltation of the Bay.

Apparently, the Chancellor after considering all of the proof entertained the view that slightly more than half the silt came from defendant's plant. We find ourselves unable to make a better approximation and concur in this finding.

■ Complainants also assign as error the disallowance of their claim for $25,447.63 which they term "interest expense".

The theory of this claim is that if complainants had not been prevented by the wrongful act of defendant from marketing their lots they could and would have sold enough lots to pay off a sum of money they had borrowed to improve the property and thus would have been saved this amount of interest.

We cannot follow this argument. The Chancellor allowed a recovery for diminution in the sale price of the lots actually sold and also allowed 6% interest on the diminuted value of the lots not sold. Now, to allow interest on borrowed money would smack to double compensation. We think the Chancellor properly disallowed this claim.

We find no error. All assignments are overruled. The decree in all respects is affirmed and the cause remanded. Costs below will remain as taxed. In our discretion all costs of appeal will be adjudged to defendant and surety on its appeal bond.

## ON PETITION TO REHEAR

■ Farmers Chemical Association, Incorporated, has filed a petition to rehear complaining of the allowance of $15,000.00 for siltation of the Bay.

The basis of this insistence is that in selling lots complainants required each purchaser to deposit $100.00 with Trustees, to be used in the removal of silt from the Bay to the level of 668 feet above sea level as required by complainants' deed from T.V.A. We do not find where

the Chancellor was asked to make any finding on this issue.

The agreement of each lot owner to pay $100.00 for this purpose and to remain liable for future assessments seems to us to contemplate only the removal of silt resulting from natural causes and not for deposits caused by the tortious act of third persons.

But, however that may be, we perceive no basis for the interposition of this contribution on the part of lot owners as a defense by defendant, a stranger to the agreement. Reduced to the ultimate, the lot owners merely agreed to aid complainants to the extent shown in discharging their obligation to T.V.A. to keep the Bay dredged, both during and after completion of the development. Complainants remain and will continue to be liable to T.V.A. under this covenant in their deed. In addition, as pointed out in the reply to the Petition to Rehear complainants have a right to sue at common law for the damages caused by the nuisance and there is no showing the recovery allowed by the Chancellor covered damages to property not owned by complainants when the bill was filed.

Accordingly, we must overrule and dismiss the Petition to Rehear at Petitioner's cost.

Cooper and Parrott, JJ., concur.