R. E. LASSATER and WIFE v. GARRETT & BROWN.

1. NUISANCE. *Jurisdiction of the Chancery Court.* The Act of 1851-2, carried into the Code, §3403, authorizing Courts of Law to abate nuisances where the fact of nuisance is found in a civil action, does not take away the jurisdiction of a Court of Chancery.

2. SAME. *Same.* The jurisdiction of the Chancery Court to interfere, does not attach, unless it appears that the existence of the nuisance is manifest, and the injury resulting therefrom not susceptible of adequate compensation at law, or such as from its continuance, must occasion

Lassater v. Garrett.

a constantly recurring grievance, which an injunction alone can prevent. If the right be doubtful, it must first be established at law.

Cases cited : Coldwell v. Knott, 10 Yer., 209 ; Vaughn v. Law, 1 Hum., 123 ; Kirkman v. Handy, 11 Hum., 406 ; Clark v. White, 2 Swan, 540 ; Wall & Co. v. Cloud, 3 Hum., 181 ; Brew v. Van Deman, 6 Heisk, 433.

Authority cited : Story's Eq. Jur., ₰925.

Code cited : ₰3403.

3. SAME. *Same. Case in judgment.* Bill to remove a mill-dam, an alleged nuisance, causing the water to overflow the adjoining lands, producing sickness, and rendering permanently unhealthy the neighborhood near by. The proof failing to show a clear and manifest right to the relief sought, the decree of the Chancellor dismissing the bill is affirmed.

4. SAME. *Costs.* Where a successful party, (a defendant in a bill to abate a nuisance) here and in the Court below, was in part chargeable with an unnecessary amount of testimony taken,

*Held,* liable for one-half of the entire costs in both Courts.

---

FROM COFFEE.

---

Appeal from the Chancery Court. B. M. TILLMAN, Chancellor.

QUARLES & THOMA and HICKERSON & SPURLOCK for Lassater and wife.

CARNES & STONE for Garrett & Brown.

MCFARLAND, J., delivered the opinion of the Court.

The complainants, by this bill, pray that the defendants be compelled to remove and abate a dam erected by them on the west, or barren fork of Duck river, in Coffee County, for the purpose of running a mill and other machinery, upon the ground that it is

24—VOL. 4.

a nuisance, producing sickness, and rendering permanently unhealthy the neighborhood near by, in which the complainants own lands and tenements.

The ground upon which Courts of Chancery exercise jurisdiction in cases of this sort, is, "that the injury, from its nature, is not susceptible of being adequately compensated in damages at law," or such as from its continuance or permanent mischief must occasion a constantly recurring grievance, which cannot be otherwise prevented but by an injunction; Story's Eq. Jur., §925. The same doctrine is laid down in a number of cases in our own reports.

It is clear, that, if the dam in question has permanently destroyed the health of the complainants or persons occupying their premises, that this would be a constantly recurring grievance, and an injury not to be compensated in damages, and a proper case for a Court of Chancery to interpose, and compel an abatement of the nuisance; and we are of the opinion that the Act of 1851–2, Code, §3403, which authorizes Courts of Law to abate nuisances, where the fact of nuisance is found in a civil action, does not take away the jurisdiction of a Court of Chancery. The question is, in what cases and under what circumstances is the jurisdiction exercised. Judge Story lays down the rule, that, "in all cases of this sort, if the right be doubtful, the Court will direct it to be tried at law, and will, in the meantime, restrain all injurious proceedings, and when the right is fully established, a perpetual injunction will be decreed."

In the case of *Caldwell* v. *Knott*, 10 Yerg., 209, it is said, "the right must be clear, manifest and un-doubted, otherwise a Court of Equity cannot interfere until the right is ascertained at law." In that case, there had been a parol license to erect the dam which overflowed the complainant's spring, and acquiescence for a considerable time, it was held, that the right must first be established at law. In the case of *Vaughn* v. *Law*, 1 Hum. 123, it was held that the existence of the nuisance had been established at law. It was said, however, that in a case where the right is clear, and the existence of the nuisance manifest, and the injury of a character that cannot be compensated in damages, a Court of Chancery interferes to prevent the mischief. In such cases, a trial at law is not neces-sary, in order to give jurisdiction."

In the case of *Kirkman* v. *Handy*, 11 Hum., 406, this Court refused to enjoin the erection of a livery stable near the complainant's houses in Nashville, hold-ing that a livery stable in a city, was not, *per se*, a nuisance.

In *Clark* v. *White*, 2 Swan, 540, language is used similar to that quoted from the case of *Vaughn* v. *Law*, but the relief was refused.

In the case of *Wall & Co.* v. *Cloud*, 3 Hum., 181, the same rule was stated, but the relief granted, without a trial at law, the Court being satisfied that the right was clear. See, also, *Brew* v. *Van Deman*, 6 Heisk., 433.

From these authorities we understand the rule to be, that relief may be granted in equity, in a case of

Lassater *v.* Garrett.

the present character, without a trial at law, but in order to do so, the right must be clear and the existence of the nuisance manifest.

We have no doubt upon the question of the complainant's right to the relief, provided it is established that the mill dam has rendered permanently unhealthy, that part of the neighborhood where the complainants reside, or where their houses and lands are situated. This would be an injury not to be compensated in damages, and as it would be a constantly recurring grievance, the only adequate remedy would be to abate the nuisance. We deem it impracticable, as well as unnecessary, to undertake in this opinion, a discussion of the testimony presented in the record. The examination and cross-examination of the witnesses was carried into details, and repetitions of the same facts to such a degree as to make an immense record. We can only state our conclusions.

The dam was first erected about the year 1856 or 1857. Its height was then some ten feet or more. It is conceded in the bill that this dam did not affect the health of the adjacent country, as it did not cause the water materially to overflow the lands, but that in the winter of 1865–6, the dam was raised eighteen inches or more, causing it to overflow the adjacent bottom, which was covered with vegetable growth, and that this, in the year 1866, generated a malaria or miasma, causing the complainants and their family and tenants to suffer from chills and fevers and malarious diseases.

That in the latter part of the year 1867, a new dam was erected in the place of the old one, some sixteen feet high, causing the water to overflow a much larger area of the bottom land, and that the malaria thereby engendered, has greatly increased the sickness, which has continued every year, with the exception of the year, or part of the year 1867, during which time the dam was washed out, when the sickness abated.

There is conflict in the proof, as to whether the height of the dam was ever materially raised, until the new one was erected in 1867. The proof, beyond doubt, shows an unusual amount of sickness in the vicinity of the dam, including the premises of the complainants, since the year 1866, with the exception of the year 1867. There is proof, however, of a general increase of malarious diseases in other parts of the county during these years. Some of the persons who had "chills and fever" on the premises of the complainants, are shown to have been afflicted with the disease before they moved to the complainants' premises. We have, in the opinions of the medical gentlemen examined as witnesses, various opinions as the origin and nature of malaria or miasm. Some maintaining that it is produced by the decomposition of vegetable matter, exposed to the action of the water and the heat of the sun, while others deny this, and give other theories which they maintain.

The defendants have invested large sums of money in the machinery operated by the water power in question, which would be destroyed or materially injured by

the destruction of this dam. We should not hesitate, however, to order its removal, if satisfied that it was the cause of the sickness, and that the health of the people in the vicinity could not be otherwise restored. But it is manifest not only from the authorities referred to, but upon reason, this ought not to be done when the question of fact is in doubt. When it is not clear that the destruction of the dam will remove the trouble, or when it is not clear that the cause of the sickness might not be otherwise removed.

It appears in proof, that the complainants, at one time, had a suit pending for the same cause, when it was agreed that the matter should be settled by the defendants causing the dam to be cleaned out and having certain ditches cut, but this, for some reason, was not done. Whether this would remove the sickness or not, it is impossible to say.

As before shown by the authorities in the cases of this character, where the right is not clear and manifest, Courts of Equity refuse to interfere until the right is established, and the nuisance made manifest by the verdict of a jury at law. There could clearly be no reason for this, in cases where the right and the existence of the nuisance, is made manifest without it. And there may be much reason for saying that a Court of Equity might determine the fact with as much certainty as a jury, but it has been long regarded as the province of a jury to determine issues of fact of this character, where the real truth is so exceedingly doubtful, as that a court is unable to

arrive at a definite conclusion.    Such issues are regarded as settled for all practical purposes by a verdict. It is true, that causes involving issues of fact, are, in Courts of Equity, usually determined by the preponderance of testimony; but in cases of this character, seeking this extraordinary relief, the right to it must be made clear and manifest, otherwise the complainant will be left to his remedy at law.    We do not feel authorized to grant the relief asked for in the present case, for the reason that it is not manifest that the dam is a nuisance, creating the sickness complained of, and that this grievance cannot be otherwise removed.

Chancellor Key dismissed the bill, and we affirm his decree, but in view of the facts, and that the defendant is in part chargeable with the unnecessary amount of testimony taken, he will pay one-half of the entire costs, both in this Court and the Court below.