Wright et al. v. State.

## WRIGHT et al. v. STATE.

### (*Knoxville.*  September Term, 1914.)

1. **NUISANCE.**  Public nuisance.  Prosecution.  Abatement.

At common law, not only is maintenance of a nuisance an offense, but on conviction of maintaining a public nuisance, not only may the offender be punished, but the nuisance ordered abated. (*Post, pp.* 282, 283.)

Code cited and construed:  Secs. 6750, 6752, and 6871 (S.).

Case cited and approved:  Woods v. Cottrell, 55 W. Va., 476.

2. **NUISANCE.**  Public nuisance.  Abatement.  Direction to sheriff.

The nuisance not being the building in which dead animals were converted into fertilizer, but the business or the manner in which it was conducted, and judicial discretion being required to be exercised in the matter of abatement of such a nuisance, it should not be intrusted to the sheriff, by a mere order to abate, without instructions as to how it be done.  (*Post, pp.* 283-285.)

Case cited and distinguished:  Bloomhuff v. State, 8 Blackf., 205; Shepard v. People, 40 Mich., 487; State v. Schaefer, 45 Wash., 9.

---

FROM KNOX.

---

Appeal from the Criminal Court of Knox County.— T. A. R. NELSON, Judge.

S. G. HEISKELL and HARRY S. HYMAN, for appellants.

WM. H. SWIGGART, JR., assistant attorney-general, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

Plaintiffs in error were indicted for the maintenance of a certain establishment in Knox county, Tennessee, wherein dead animals were converted into fertilizing material. It was averred that the process occasioned offensive and unwholesome smells and stenches, which impregnated the atmosphere and rendered the neighborhood unhealthy and almost uninhabitable. They were found guilty of maintaining a nuisance, fined, and the nuisance ordered to be abated, and the case is appealed in error to this court.

Wright and Wade have a contract with the city of Knoxville and with Knox county under which it is their duty to collect from the streets, alley::, roads, and other places in said city and county the carcasses of all dead animals and remove them. These carcasses are taken to their plant, which is located three or four miles from the city, and there cut up and boiled, pressed, and converted into commercial fertilizer. It is not necessary to go into the details of the process of manufacture, and these details are not pleasant to dwell upon.

Considerable proof was introduced by the State from persons living in the neighborhood of this reduction plant, as it is called, to the effect that a great stench issues from the establishment and is diffused over quite an area, much to the discomfort and annoyance of the neighborhood, and to the detriment of the health of that community. On the contrary, the defendants be-

low introduced proof tending to show that their plant was so arranged as to consume all offensive gases and vapors, that carcasses were promptly disposed of on their arrival, and that no odor could be detected until one was in thirty or forty feet of the establishment. The plant was located on a tract of land about fifty acres in extent.

Much of the State's proof indicated that the carcasses were not promptly disposed of upon their arrival at the plant, and it is altogether possible that the stench complained of was occasioned by the failure of plaintiffs in error to promptly attend to the dead animals which reached them.

There is abundant evidence to sustain the judgment of the court that the operation of this plant in the manner it has been done was a nuisance to the community. There are other assignments of error besides the one challenging the sufficiency of the evidence; but we cannot see that any of the matters complained of affected the result below, and the evidence does not preponderate against the verdict.

The judgment of the trial court is in the following language:

"It is therefore considered by the court that the defendants for the offense of which they stand convicted shall forfeit and pay to the State of Tennessee a joint fine of twenty-five dollars, together with the costs of this cause. It is further ordered by the court that the defendants be committed to the Knox County Workhouse, there to remain until said fine and costs are

fully paid or secured, or they may be otherwise released as the law directs. It is further ordered by the court that the sheriff of Knox county abate said nuisance in compliance with the terms of the statute.''

It will be observed that the sheriff is ordered in general terms to abate this nuisance, but no direction whatever is given to him as to the manner in which he shall proceed.

The indictment in this case is probably maintainable under section 6750 of Shannon's Code, with reference to offensive trades and manufactures occasioning noxious exhalations, etc. Section 6752 of Shannon's Code provides that such nuisances may be abated according to the provisions of Shannon's Code, sec. 6871, and the latter section is as follows:

''Upon conviction, the court may order the nuisance to be abated by the sheriff of the county, at the expense of the defendant.''

It is immaterial whether the defendants below be considered to have violated the foregoing statute or not. The maintaining of a nuisance was an offense at common law, and at common law, upon conviction of maintaining a public nuisance, the offender might not only be punished, but the nuisance might be ordered abated and the thing with which the nuisance was done destroyed. *Woods* v. *Cottrell,* 55 W. Va., 476, 47 S. E., 275, 65 L. R. A., 616, 104 Am. St. Rep., 1004, 2 Ann. Cas., 933; 1 Am. & Eng. Enc. of Law (2 Ed.), 78; 2 Wood on Nuisance, sec. 864.

So the court was justified in ordering the abatement of this nuisance, whether the proceedings herein were had under our statutes or under the common law.

We think, however, the court should have directed the manner in which the abatement was to be accomplished, and that it was improper to intrust this matter to the sheriff, without any instructions, under a general command "to abate said nuisance in compliance with the terms of the statute."

To abate a nuisance does not necessarily mean to destroy the premises in which it is located. This building was not a nuisance in itself. The nuisance arose from the business conducted in the building. It may be that this business could be so carried on as to avoid the stench. The building should not be destroyed, unless it clearly appears that the nuisance can be abated in no other way. The conduct of the business itself should not be prohibited, unless it clearly appears that the plant cannot be operated without creating a nuisance.

"Where the building or structure, complained of is of itself a nuisance, the court will, if necessary, order its removal; but a destruction of the structure complained of should not be ordered until it is conclusively established that no other measure is equally efficacious for the abatement of the nuisance and a building not in itself a nuisance cannot be destroyed because a nuisance is created therein." 29 Cyc., 1288.

"Property is not to be destroyed until its destruction is lawfully ascertained to be necessary in order

to stop the nuisance, and then no other and no more is to be destroyed than is . . . determined to be needful to effect that object." *Shepard* v. *People,* 40 Mich., 487.

Likewise it has been held that premises are not to be destroyed when "the nuisance was in the manner in which they were kept." *Bloomhuff* v. *State,* 8 Blackf. (Ind.), 205.

"The public must be protected against such conditions as are disclosed by this record, but individuals must also be protected in their property rights." —said the supreme court of Washington, dealing with a judgment prohibiting the operation of a slaughterhouse. The court continued:

"If the business of appellant can be conducted on the premises described in the information, in such a manner as not to cause or create a nuisance, he should be permitted to so conduct it. If it cannot, the rights of the appellant must yield to those of the public." *State* v. *Schaefer,* 45 Wash., 9, 87 Pac., 949.

From the foregoing authorities, it will be seen that judicial discretion is to be exercised in the manner of abatement of a nuisance of this kind, and such an undertaking should not be intrusted to the sheriff, with no instructions as to how he shall proceed.

For this reason, while the judgment below will be affirmed, in so far as a fine is assessed against the plaintiffs in error, the cause must be remanded to the lower court to devise the scheme and manner in which this nuisance shall be abated. The property rights of

plaintiffs in error should be respected as much as possible. The court may give them a reasonable period in which to try out more careful methods, and to ascertain if it is possible to operate their plant without disseminating the offensive odors. Or the court may hear proof and determine himself whether it is possible to operate the establishment without offense to the neighborhood. If after a test by the plaintiffs in error, or if after hearing proof, the court concludes that it is impossible to conduct this business without creating a nuisance, he should order its discontinuance. We see no necessity upon the record before us for ordering the destruction of this property under any circumstances, and unless something further is developed upon the remand an abatement of the nuisance can be accomplished by an injunction against the plaintiffs in error forbidding them to continue the operation of this plant at this place. Under the present order, the sheriff might destroy the entire plant. It is too broad.

With the modifications indicated, the judgment will be affirmed, and the cause remanded.