# CHARLES R. CRABTREE et al. v. CITY AUTO SALVAGE COMPANY. —340 S. W. (2d) 940.

Middle Section. April 1, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

F. Clay Bailey, Jr., Nashville, for plaintiffs.

Charles L. Cornelius, W. Ovid Collins, Jr., Nashville, for defendant.

I

SHRIVER, J. The complainants below, Charles R. Crabtree, et al., are appellees here, while City Auto Salvage Company, is the appellant, however, the parties will be referred to as complainants and defendant as they appeared in the Court below.

Counsel for defendant in their brief and argument state that this appeal presents the following basic question;

"Is the operation of defendant's automobile salvage business shown by the proof to be *necessarily* so offensive and injurious to complainant's health, comfort and safety and the enjoyment of their property, as to require its absolute abatement as a nuisance?"

Counsel for defendant further state that they emphasize the word *necessarily* because, even if there were proof of a nuisance, the Chancellor was bound to determine whether the defendant's operation could be modified or restricted so as to afford complainants relief, without resorting to the harsh remedy of mandatory injunction requiring the defendant to close its business and remove all automobiles and other property from the premises within 120 days, as was decreed below.

The complainants Charles R. Crabtree, et al., filed their bill on behalf of themselves and all other residents of the 12th Civil District of Davidson County similarly situated, alleging that they live in a residential area in said district, composed of two sub-divisions named therein, located just off the Dickerson Road, which sub-divisions have been built up in the last few years with residences of complainants and those in whose behalf the suit is brought.

It is alleged that the defendant corporation purchased a lot on Dickerson Road composed of approximately 15 acres lying Eastwardly from the said road and that said corporation began business on or about the first of May 1957 with a few wrecked automobiles close to the main building of the company on the Dickerson Road but, thereafter increased the number of automobiles on said lot until the area was about three fourths filled with wrecked cars of all makes and kinds.

It is further alleged that the defendant was engaged in hauling wrecked automobiles to their premises for storage and removing parts therefrom by wrenches, hammers and acetylene torches, burning tires, grease and oil causing noxious odors and smoke as well as creating much hazard from fire. That such noises accompanying the bringing in of wrecks, working over them hammering and cutting out parts, the burning of grease etc. destroyed the peaceful esthetic charm of a well-kept restricted residential area by piling in its very midst a graveyard of rusty, blackened remains of junked automobiles, which amounts to a private and public nuisance, in fact, depriving complainants of the peaceful, tranquil and rightful use of their property, as well as destroying the sales and rental value thereof.

The bill prays for an injunction to restrain and prohibit the defendant, its agents and employees from bringing into or on its property any wrecked automobiles for storage and that an injunction issue to restrain and prohibit the defendant from maintaining, operating or using its property for an automobile salvage operation; that the business be declared a nuisance and abated, allowing the defendant a reasonable time to process the wrecked automobiles on hand and clear all refuse away at its own expense, and for general relief.

The answer denies the material allegations of the bill and, among other things avers that the homes of the complainants and others located in these sub-divisions were built, for the most part, long after the Davidson County Planning Commission had made its report to the July Term, 1940, of the Quarterly County Court and after the Magistrates representing the 12th Civil District in the Quarterly County Court joined with the Magistrates from the rest of the County in voting to exclude the 12th District from all zoning regulations, with the result that the 12th Civil District including the area involved here, has not been subjected to any zoning regulations.

And it further avers that the present suit is an effort on the part of a few citizens of the 12th Civil District to zone that part of the District without legislative aid.

The answer also avers that there are numerous business establishments, including two other salvage yards, in the area along the Dickerson Road where defendant's business is located.

The cause was heard before the Chancellor on oral testimony and resulted in an oral opinion which was tran-

scribed and put in the record, followed by a decree in which the Chancellor found certain facts as follows:

That in April 1957 the defendant, City Auto Salvage Company, purchased a tract of land in the 12th Civil District of Davidson County containing approximately 15 acres described in the pleadings, to be used as an automobile salvage yard; that the property fronts about 200 feet on the East side of the Dickerson Road and runs back between lines some 1700 feet abutting the rear property line of residential property located on the North side of Gordon Terrace, the West side of Woody Hill Drive, and the South side of Dellway Drive; that the residences in the area are moderately priced with well kept lawns, including shrubbery and trees, the appraised value of which varies from $7,500.00 to $14,000.00; that many wrecked automobiles are now on the salvage yard and defendant's officers stated that it was their intention to fill the 15 acre tract with wrecked automobiles; that the defendant's business is an industrial operation, highly unsightly to the neighborhood, creating much noise, dust, smoke, stench, odors and greatly lessening the private, peaceful enjoyment of said homeowners and seriously depreciating the sale and loan value of their property; that said salvage operation is of no benefit to the community; that its sales and services are made primarily to insurance companies, automobile dealers, and other salvage yards; that the operation of defendant's Salvage Yard is an actionable nuisance and should be permanently enjoined from its operation in the area above described.

The decree then proceeds;

"It Is, Therefore, Ordered, Adjudged And Declared, by the Court:

"1. That the operation by the defendant of an automobile salvage yard upon the area hereinabove referred to and described is an actionable nuisance.

"2. Effective 20 days after the entry of this decree, the defendant, its agents and employees are hereby enjoined from bringing into and on the hereinabove described property wrecked automobiles.

"3. That the defendant, its agents and employees be, and they are hereby, enjoined from maintaining, operating or using its hereinabove described property for an automobile salvage operation. However, the injunction granted in this paragraph shall not be effective until 120 days after the entry of this decree, this being deemed a reasonable time by the Court within which to permit the defendant to liquidate its business and remove the wrecked automobiles and other refuse from the premises above referred to and described.

"4. Defendant will pay the costs of this cause."

To the foregoing action the defendant excepted and perfected an appeal and has assigned errors.

## II

The Assignments of Error are as follows;

"1. The Chancellor erred in finding defendant's operation to be a nuisance.

"This was error because the preponderance of the evidence is to the contrary.

"2. Even if there were evidence of a nuisance, the Chancellor erred in precipitously terminating de-

fendant's business by mandatory injunction instead of merely restraining the alleged offenses."

## III

The proof shows that early in 1957 when the defendant decided to enter the automobile salvage business, its owners examined property in many sections of Davidson County in an effort to find a suitable location for the business. After going to the Davidson County Court House and soliciting information from the County Planning and Zoning Commission and the County Court Clerk's Office, the site in question was chosen because it was discovered that there were no zoning regulations in that area to prevent the location of such a business there and because there are two other automobile salvage yards in the immediate vicinity on the Dickerson Road and it was thought that customers seeking parts for automobiles would be, thus, encouraged to go there.

Dickerson Road is a four-lane through U. S. Highway connecting Nashville with points North and carries very heavy traffic of all kinds, both day and night.

Immediately North of defendant's tract is an unfinished basement residence and a large building occupied during 1956 and 1957 by the Utilities Construction Company, which stored and repaired heavy equipment used in erecting utility poles. This lot extends back from the highway to a depth of 520 feet. Defendant's witness, Mrs. Winifred W. Foster, who lives on this property at 2535 Dickerson Road, stated that she and her family had lived there about 14 years and that up until about a year ago the Utilities Construction Company had rented it. She stated that it was about the worst looking place on the high-

way because they had all kinds of equipment stored on it and they repaired their trucks there. This property extends behind the first residence on Dellway Drive and, at the time she testified, there was equipment on the back of the lot, including trucks, and Mr. Foster and a man with whom he is associated have salvage stored on the property which they buy from Camp Campbell and Sewart Air Base and other places and this operation has been going on for the last several years. She testified that Cain-Sloan has a bill-board on the edge of the property and that there is a bill-board advertising the Hines Motel located there also. This property fronts a total of 253 feet on Dickerson Road and the line is about 90 feet from the line of the defendant City Auto Salvage Company. When Mrs. Foster was asked about dust arising from the City Auto Salvage operations she stated,

"Well, I wouldn't be able to determine whether the dust came from them or from the highway, because I have always had dust ever since I've been there, before they came even, because see we are right there on the highway and our windows and all, why we get dust from the highway. So I wouldn't know. I couldn't tell any difference."

When asked about offensive odors she stated that there were none "Except from the diesels on the highway, that's the only bad odor I have." She also stated that the noise from the highway gave them trouble because there is a little rise there and when the trucks get opposite that point they shift gears and make considerable noise.

Mr. Leslie E. Smith who testified on behalf of the defendants stated that he is a deputy sheriff and that

he resides in the neighborhood in question where he has lived all his life. His brother, Baxter Smith, is in the salvage business having a junk yard on Dickerson Road just South of the City Auto Salvage place. He pointed out that the salvage yard in question is just a short distance South of the Crabtree Service Station, operated by Mr. Crabtree, one of the complainants, and the first witness to testify for the complainants. The junk yard of Mr. Smith's brother, is just a little over a block from the Crabtree Filling Station. He testified that his brother does not now operate the junk yard, but just has some junk automobiles there for his own use, however, the witness operated a junk yard at that place for several years beginning back in 1935 or 1936 and then went out of business in 1939, but, after he came back from the service, he went back in the junk business buying old cars and operating at the same location until he went to work in the Sheriff's Office in 1952.

Mr. W. A. Rainey, one of the officers of the City Auto Salvage Company when asked how he happened to choose this particular location stated that the Hilltop Salvage Company was right there in the neighborhood and Joe's Auto Parts was just up the road and with those two being out there he thought it would be a good neighborhood to locate in because people were going out there daily to buy parts.

He also testified that he had an attorney investigate the zoning situation there and found that it was unzoned and was advised that he could open a salvage yard there.

The record shows that immediately South of defendant's property is a group of commercial enterprises, including a drive-in grocery, a cafe, a real estate office and

filling station, while immediately across the highway is an ice cream stand, a residence set back from the road to the South and then Hilltop Auto Salvage Company.

It is shown that in order to present a neat appearance and achieve efficiency of operation, all the automobiles of the defendant company are lined up in an orderly fashion according to makes. No cars are burned on the site, repairs and parts are removed for sale with wrenches and an acetylene torch, hammers being used only sparingly to avoid damage to the parts.

The place is open for business from about eight o'clock in the morning until five or five thirty in the afternoon with no work being done at night and only two men are regularly employed on the lot, with one or two others in the office.

Several of complainants and their witnesses testified concerning the noise, dust and odors emanating from the defendant's place of business, and one witness testified that he saw a rat running across the road going into this place and stated that it is generally known that these places become rat infested.

More than one witness testified that the upholstering on automobiles, when subjected to rain and moisture, emits very unpleasant odors and that such odors come from the yard of defendant.

It is shown that the employees of the defendant use jeeps to run back and forth on the yard and to haul the parts and that the roads of gravel or crushed stone give rise to considerable dust.

Mr. William Pitts, Director and Secretary of the Davidson County Planning Commission, testified, among other

things, that after the study was made in July 1940 of planning and zoning for the County, it was presented to the County Court and the Magistrates who represented the 12th District made a motion at the July Term 1940 that the 12th District be excluded from from all zoning, and that since that time they have had two or three contects for Magistrates in the 12th District and each time the Magistrates who campaigned on a platform of having no zoning have been elected by the people, and that there is no zoning in the 12th District.

Exhibit No. 1 to complainant Crabtree's testimony is a large aerial photograph of the area showing the defendant's location in relation to the whole neighborhood, including the residences of complainants, and it is quite illuminating as showing the situation about which complaint is made here.

## V

We now turn to a consideration of the applicable authorities.

In City of Nashville v. Nevin, 12 Tenn. App. 336, it was said that a nuisance, in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.

To like effect is Williams v. Cross, 16 Tenn. App. 454, 459, 65 S. W. (2d) 198.

In Lassater v. Garrett, 63 Tenn. 368, it was held that the jurisdiction of the Chancery Court to interfere does not attach, unless it appears that the existence of the nuisance is manifest, and the injury resulting therefrom not susceptible of adequate compensation at law, or, such

as, from its continuance, must occasion a constantly recurring grievance which an injunction alone can prevent.

And again in Weakley v. Page, 102 Tenn. 178, 53 S. W. 551, 46 L. R. A. 552, it was said that a Court of equity will enjoin and abate nuisances without a judgment at law establishing its existence, where the fact of the nuisance is made manifest by certain and reliable proof, and the resulting injury is of a character that cannot be compensated adequately by damages.

To like effect is Vaughn v. Law, 20 Tenn. 123.

While we have found no Tennessee case dealing with the precise question involved here we note that in Kirkman v. Handy, 30 Tenn. 406, 54 Am. Dec. 45, it was held that a livery stable in a town is not, in itself, a nuisance; but if it be so constructed or so kept as to destroy the comfort of persons occupying adjoining premises and impairs their value as places of habitation, it, thereby, becomes a nuisance. It was further held in said case that where the matter complained of is not in itself a nuisance, but may be so according to the circumstances, those circumstances must be ascertained before a Court of Chancery will interfere by injunction.

In Reid v. Memphis Memorial Park, 5 Tenn. App. 105, where it was sought to enjoin the operation of a cemetery adjoining the property of the complainants, the Court, among other things, in quoting from Rea v. Tacoma Mausoleum Ass'n., 103 Wash. 429, 174 P. 961, 1 A. L. R. 541, said:

"The erection within a few feet of a dwelling house of a mausoleum for the burial of the dead cannot be enjoined as a nuisance, although its presence

will cause the inmates of the dwelling unpleasant thoughts and injuriously affect the value of the property, if there will be no fumes or drainage to affect the physical senses or health of those in the neighborhood.''

In quoting with approval from City of New Orleans v. St. Louis's Church, 11 La. Ann. 244, the Court further said:

''No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. Among the decisions holding in harmony with those above quoted from, we note the following:'' Citing many cases from numerous jurisdictions.

Again the Court said (5 Tenn. App. at page 117),

''A cemetery may be objectionable or offensive to the taste of an adjoining land owner, but its use cannot be enjoined merely because it is offensive to the aesthetic sense of such proprietor. Before it can be abated or its use enjoined as a nuisance it must be clearly and satisfactorily proven to be a nuisance, and this cannot be done by evidence tending to show that it might become such. Sutton v. Findlay Cemetery Assn., 270 Ill. 11, 110 N. E. 315, 11 L. R. A., 1916B, 1135, Ann. Cas., 1917B, 559.''

It is generally said by the authorities that the operation of an automobile salvage yard is not a nuisance per se.

In Vermont Salvage Corporation v. Village of St. Johnsbury, 113 Vt. 341, 34 A. (2d) 188, it was said that maintaining and operating a junk yard, whether classed as a motor vehicle junk yard or otherwise, is a legitimate and useful business and not a nuisance per se.

It was further held that the statute declaring a motor vehicle junk yard located alongside, or in plain view of a public traveled highway, to be a nuisance, is unconstitutional as an improper exercise of police power. Also see Levine v. Board of Adjustment of City of New Britain, 125 Conn. 478, 7 A. (2d) 222; Grunstein v. City of Ashland, 25 Ohio N. P., N. S., 493.

In Parkersburg Builders Material Co. v. Barrack, 118 W. Va. 608, 191 S. E. 368, 110 A. L. R. 1454, it was said that the business of buying old automobiles, wrecking them and selling serviceable parts as such and junking the residue, is an honorable and useful business but it is of a kind that is necessarily not pleasing to the view and should therefore not be located in a community of unquestioned residential character. In said case it was also held, however, that where a section of a municipality is not clearly established as a residential community a court of equity will not be warranted in excluding therefrom as a nuisance, an automobile wrecking business merely on the grounds of unsightliness. The Court in said case refused to enjoin the operation of the business although located adjacent to some residences.

In a concurring opinion in said case by Mr. Justice Kenna, reported in 192 S. E. 291, 292, the subject at hand is discussed in a very enlightening manner.

Among other things, it is said:

"To my mind, the major fallacy of the majority opinion lies in the fact that to sustain its position that unsightliness alone may constitute a nuisance, it depends primarily upon those cases which sustain building regulations, zoning ordinances, and the like, as being proper exercises of the police power of the state."

He then observes that, although he found no case that has sustained such an exercise of the police power on the ground that aesthetic considerations, by themselves, justify it, the unmistakable trend is to sustain the exercise of the power of zoning as being promotive of the public health and safety and in furtherance of the general welfare of the community.

But he says:

"There is to my mind a clear and most decided difference between direct control by the courts through the process of injunction on the one hand, and the control exercised by the legislative branch through the use of the police power on the other."

It is pointed out with respect to the police power that the Supreme Court of the U. S. has said, that while the police power of the State cannot be so arbitrarily exercised as to deprive persons of their property without due process of law or deny them equal protection of the law, it is one of the most essential powers of Government

and one of the least limitable. However, it must never be forgotten by the Courts that this great power is lodged in the legislative branch of the government composed of representatives directly elected by the people for the purpose of making laws. Its exercise is not intended for the courts whose business is to apply existing legal principles.

The opinion continues,

"There can be no doubt that it is a vast extension of the former powers of the courts to say that a court of equity may enjoin as a nuisance the continuation of a thing because it is unsightly. So far as I have been able by an exhaustive search to discover, no judicial decision in either England or America has ever so held.

       *     *     *     *     *     *

"My own investigation confirms what I believe is apparent from a perusal of the cases used in the principal opinion, that is, that the direct intervention of courts of equity on the ground of unsightliness alone is a theory that rests upon little or no authority. On the other hand, the courts of this country by direct pronouncements, as well as by cases of inescapable analogy, have universally declined to so extend the power of the courts."

The opinion then lists a long line of cases which have held directly that mere unsightliness is not a subject for direct injunctive relief.

It is then stated that the rules that govern the law of nuisances are uncertain enough without engrafting upon them a doctrine as essentially speculative as the dictum

in the majority opinion. And that if such doctrine were a part of our equity jurisprudence, our courts are likely to be called upon in a large degree to embark into the business of city planning with little to guide them excepting the infinite variations of taste and preference.

In Kubby v. Hammond, 68 Ariz., 17, 198 P. 134, it was held that noise in order to justify injunctive relief must be such as to produce a substantial injury, the annoyance must be such as to injure or annoy a normal person and that proof of nuisance must be clear and convincing, particularly where it is sought to prevent the continuance of a lawful business and, further, that the proper remedy for minor inconveniences arising from an alleged usage lies in an action for damages rather than for injunction. Also see Williams v. Cross, 16 Tenn. App. 454, 65 S. W. (2d) 198 and Fish v. Hanna Coal & Ore Corp., D. C., 164 F. Supp. 870; 39 Am. Jur. Nuisances 47; and 66 C. J. S. Nuisances sec. 75, p. 824.

## VI

We are impressed that the real gravamen of the complaint in this case is the existence of the Automobile Salvage Yard near the homes of the complainants.

They were disturbed about it being located in their neighborhood, and naturally so, before it began business. They did not want it there and took steps to try to prevent its being located there by trying to persuade the defendants not to locate in their community and then by negotiating to buy the property. But all this took place long after the time when the question of zoning the various districts of this County were before the County Court and the representatives of the people in the 12th District opposed zoning for that district and defeated it

in the County Court. Complainants, along with other residents of that district, were on notice of the action of the County Court, and the subdivision in which these homes were built was opened up and developed largely after the foregoing action excluding the district from the zoning regulations. Thus, they knew or should have known when they built their homes that they were in no position to prevent the location of other businesses in that vicinity where two salvage yards already existed, along with numerous other businesses along Dickerson Road.

There is evidence of dust and noise and odors emanating from the salvage yard of the defendant, but we are also impressed that much of the noise and dust may come from the four lane highway, traveled, as it is, by many trucks and cars day and night.

■ While we do not hold that the evidence preponderates against the finding of fact by the Chancellor as to noise, odors and dust, we do not find that he was justified in completely enjoining the operation of this business as a nuisance.

■ Ordinarily, a mandatory injunction is limited to the acts complained of, leaving the right to carry on the business in a proper and lawful manner, and the operation of a lawful business will not be enjoined without a clear showing that it is impossible or impracticable to eliminate its offensive features. See Wright v. State, 130 Tenn. 279, 170 S. W. 57, 58, wherein this rule is stated;

"The conduct of the business itself should not be prohibited, unless it clearly appears that the plant cannot be operated without creating a nuisance."

We think it has not been demonstrated in this record that the neighborhood in which the defendant's business is located is clearly and unmistakably residential. It is argued by learned counsel for the complainant that, while there are commercial and business establishments along the Dickerson Road, this property extends back into a residential area.

We are not furnished with proof as to how far back the average lots or business properties fronting on the Dickerson Road in this area extend, or should be allowed to extend. Thus, the Court has no yardstick by which to undertake to determine how far back the property fronting on Dickerson Road, which is clearly in a commercial unzoned area, should extend or be limited, if at all, in order to afford protection to the residential area, also unzoned, lying behind and adjacent to it.

It is suggested in the record that the acreage owned by the defendant is unsuitable for residential purposes being unable to pass the percolation tests for the absorption of sewerage etc., there being no other means of disposing of sewerage except by septic tanks.

It seems to us that the relief sought by the complainants and granted by the Chancellor, is a matter of zoning which the Court is asked to declare and enforce. But, as hereinabove indicated the Courts are not equipped to do this, and should not invade the legislative field of zoning which should be left to the representatives charged with that duty.

It results that the decree of the Chancellor will be modified so as to enjoin and restrain the defendants from so operating their salvage yard as to cause excessive amounts of dust to be raised and deposited on the prem-

ises of the complainants, or in the neighborhood generally, and to this end the defendants should be required to oil or surface the roads used on the premises so as to avoid the creation of dust. Defendants will be further enjoined from creating or permitting the creation of smoke and/or noxious odors from the yard in question occasioned by the burning of upholstery or other automobile parts, or allowing the upholstery in the junked cars to become soaked and wet so as to create a stench and mal odor in the neighborhood.

We do not believe that the record shows that there have been excessive noises created by the operation of the salvage yard of defendant, nor is it shown that the area is rat infested, but it should be observed that in the event there is excessive noise to the annoyance and discomfort of the neighborhood, or, if the area should be permitted to become rat infested, on proper application to the Court, undoubtedly, injunctive relief would be proper.

The defendant's assignments of error are sustained, the decree of the Chancrey Court will be modified as hereinabove indicated, and the cause is remanded to the Court below for enforcement of the decree.

The defendants will pay the costs of the cause.

Modified and remanded.

Hickerson and Humphreys, JJ., concur.