# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**August 12, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

JAMES L. WEST, ET AL.,      )
      )
    Plaintiffs/Appellees,      )
      )    Lincoln Chancery
      )    No. 8380
VS.      )
      )    Appeal No.
      )    01A01-9707-CH-00281
FRANK LUNA,      )
      )
    Defendant/Appellant.      )

APPEAL FROM THE CHANCERY COURT
FOR LINCOLN COUNTY
AT FAYETTEVILLE, TENNESSEE

THE HONORABLE TYRUS H. COBB, CHANCELLOR

For Plaintiffs/Appellees:            For Defendant/Appellant:

R. Whitney Stevens, Jr.            Brad W. Hornsby
Stevens, Bagley & Stevens          Bullock, Fly & McFarlin
Fayetteville, Tennessee            Murfreesboro, Tennessee

## VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal arises out of a long-running dispute over a dirt race track in Lincoln County. Six years after the track was permanently enjoined from operating at a noise level that amounted to a nuisance, a number of the track's residential neighbors filed suit in the Chancery Court for Lincoln County to enjoin the track's new owner from conducting stock car races because they feared that the noise would create a nuisance. Despite the new owner's assurances that he planned to muffle the noise with sound-reducing technology and landscape modifications, the trial court, sitting without a jury, permanently enjoined the new owner from holding automobile races of any sort at the track. On this appeal, the track's owner challenges the breadth of the injunction and the fact that it was issued before he reopened the track. We have determined that the injunction must be vacated because it is too broad.

## I.

Lincoln County lies near the Alabama border. Fields and pastures with occasional tree rows and country roads dominate the landscape. Despite the recent influx of new residents, the county is unquestionably rural. Neighbors are, by Nashville's standards, few and far between. Approximately 8,200 of the county's 29,000 residents live in Fayetteville, the county seat.

In the late 1970s, Claude Holt constructed and began to operate an unpaved race track called the Circle H Speedway on the Old Boonshill Road near Fayetteville. In 1979 a group of neighbors living near the track sued Mr. Holt in the Chancery Court for Lincoln County alleging that the noise created by the stock car races constituted a nuisance. Following a bench trial, the trial court found that the noise permeated the neighboring homes and that mufflers might reduce the noise to more acceptable levels. Accordingly, in November 1979, the trial court entered an order enjoining Mr. Holt from operating a race track without ensuring that all cars used mufflers to reduce the noise to a level acceptable to the neighbors.

The neighbors returned to court in 1981 seeking to hold Mr. Holt in contempt for operating his race track in violation of the November 1979 injunction. Although the present record indicates that Mr. Holt had been holding races regularly, it does not reflect the number of stock cars that were racing, the number of spectators who were attending the races, or the level of the noise created by the races. In response to the neighbors' evidence that he was not requiring the stock cars to use mufflers, Mr. Holt explained that he was reluctant to ask the drivers to "ruin their engines" by installing mufflers. The trial court found that Mr. Holt's refusal to require mufflers indicated that he would not comply with its November 1979 order and, in September 1981, entered an order finding Mr. Holt in contempt and permanently enjoining him "individually or through employees, agents or assigns . . . from operating the race track . . . known as the Circle H. Speedway."

Mr. Holt moved to amend the September 1981 order based on new evidence obtained during test races of cars equipped with mufflers. The trial court took the matter under advisement to study the "highly technical exhibits" submitted by Mr. Holt. In May 1982 the trial court entered an amended order permanently enjoining Mr. Holt "from further operation of the speedway until such time as he can and will operate same where the noise level will not be a nuisance to the plaintiffs."

Five years later, Mr. Holt sold the speedway to Frank Luna. Mr. Luna was aware of the injunctions but declared that he intended to renovate and reopen the track. He proposed to build large grandstands, plant trees, and erect a four-foot retaining wall to absorb or deflect the noise generated by the races. Fearing that the proposed track would generate noise at nuisance levels, a group of the track's neighbors filed a fresh lawsuit in the Chancery Court for Lincoln County against Messrs. Holt and Luna seeking to injunctive and monetary relief and to hold them in contempt. Based on the neighbors' allegations that the proposed race track would have as many as 15,000 spectators, twenty-four stock cars racing at once, and a public address system, the trial court entered an order in June 1988 temporarily enjoining Messrs. Holt and Luna from "engaging in or allowing the racing of automobiles."

The trial court finally conducted a bench trial in July 1996 after eight years of inaction and the neighbors' withdrawal of their claim for damages. In addition to the testimony of Mr. Luna and several of the track's neighbors, the trial court received a report from a noise level expert. The expert's report contained data on the ambient noise level in the surrounding neighborhood with one vehicle operating on the track and also included "comments" concerning the potential effect of a public address system and crowd noise and an "opinion" concerning the efficacy of proposed mufflers. The parties disagreed strongly both about the noise that would be generated when twenty-four cars were racing and about the probable effects on the noise level by the proposed retaining wall, the grandstands, and additional planting along an existing tree row.

Following the hearing, the trial court ruled from the bench that Mr. Luna should be enjoined from operating a race track on his property. In August 1996, the trial court entered an order, essentially incorporating the terms of its September 1981 order, permanently enjoining Mr. Luna "from maintaining and/or operating an automobile race track or racing facility, and from allowing such automobile racing, on the real estate located on the Old Boonshill Road." Later, the trial court denied Mr. Luna's post-trial motion arguing that the neighbors' suit was premature because the determination of whether stock car racing at the track constitutes a nuisance should be delayed until the track is fully operational.

## II.
### EXCESSIVE NOISE AS A NUISANCE

The right to property, being both fundamental and necessary to the existence of advanced societies, is vigorously protected by the United States Constitution and the Constitution of Tennessee. *See* U.S. Const. amends. III, IV, V; Tenn. Const. art. I, §§ 7, 8, 21. Among the most important aspects of property ownership are the rights to use, enjoy, and dispose of property at one's discretion without regard to non-vested interests. *See Weiss v. Broadway Nat'l Bank*, 204 Tenn. 563, 571, 322 S.W.2d 427, 431 (1959); *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 96 (Tenn. Ct. App. 1987). Every owner of land, where not restrained by covenant, has the entire dominion of the soil to whatever extent he or she may choose to occupy it. Property owners may use their

land according to their own judgment without being answerable to any adjoining owner, unless their use of the property inflicts an injury on their neighbor. *See Humes v. Mayor of Knoxville*, 20 Tenn. (1 Hum.) 403, 407 (1839).

The courts of equity are frequently called upon to strike a balance between the competing, co-equal rights of property owners to enjoy their own land without interference caused by their neighbors' enjoyment of their property. The common-law doctrine of nuisance is the device traditionally used to strike this balance. A nuisance is anything that annoys or disturbs another's free use of his or her property or that renders the ordinary use or physical occupation of another's property uncomfortable. *See Jenkins v. CSX Transp., Inc.*, 906 S.W.2d 460, 462 (Tenn. Ct. App. 1995); *Anthony v. Construction Prods., Inc.*, 677 S.W.2d 4, 7 (Tenn Ct. App. 1984). More specifically, a nuisance is any activity that endangers health or life, offends the senses, or interferes with another's use and enjoyment of their property. *See Oakley v. Simmons*, 799 S.W.2d 669, 671 (Tenn. Ct. App. 1990); *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 283-84 (Tenn. Ct. App. 1988); *Hagaman v. Slaughter*, 49 Tenn. App. 338, 345, 354 S.W.2d 818, 821 (1961).

An activity cannot be considered a nuisance unless it has or will produce some negative effect on its surroundings. *See State ex rel. Cunningham v. Feezell*, 218 Tenn. 17, 23, 400 S.W.2d 716, 719 (1966). Depending on the surroundings, activities that constitute a nuisance in one context may not constitute a nuisance in another. Thus, whether a particular activity or use of property amounts to an unreasonable invasion of another's legally protectable interests depends on the circumstances of each case, such as the character of the surroundings, the nature, utility, and social value of the use, and the nature and extent of the harm involved. *See Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981); *Sherrod v. Dutton*, 635 S.W.2d 117, 119 (Tenn. Ct. App. 1982); *Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn. App. 393, 402, 391 S.W.2d 5, 9 (1964).

Nuisances come in many forms, from the pooling of sludge on adjoining land due to erection of a dam, to particulate invasion by smoke spewing from a factory, to the mere existence of a powderhouse in a city. *See generally Neal v. Henry*, 19 Tenn. (1 Meigs) 17 (1838) (dam causing overflow upstream); *Green v.*

*Arnold*, 25 Tenn. App. 67, 150 S.W.2d 1075 (1940) (lead smelting plant pouring smoke and fumes onto nearby farm); *Cheatham v. Shearon*, 31 Tenn. (1 Swan) 213 (1851) (powderhouse in populated portion of a city). Certain uses of property can even be considered nuisances per se, but to qualify as a nuisance per se, the use must necessarily produce harmful effects on surrounding property even though due care has been exercised. *See Llewellyn v. City of Knoxville*, 33 Tenn. App. 632, 649, 232 S.W.2d 568, 576 (1950).

Noise does not necessarily constitute a nuisance because property owners have the right only to quiet and peaceful, not silent, enjoyment of their property. *See Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn. App. at 402, 391 S.W.2d at 9-10. Nevertheless, excessive noise can become a nuisance when it imposes on neighbors a level of discomfort beyond the reasonable limit dictated by surrounding conditions. *See Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn. App. at 403, 391 S.W.2d at 10. In order to be considered a nuisance, noise must be so excessive that it is unreasonable in light of all the circumstances and must cause injury to the health and comfort of ordinary persons in the vicinity. *See Gardner v. International Shoe Co.*, 49 N.E.2d 328, 335 (Ill. App. Ct. 1943); *Strough v. Ideal Supplies Co.*, 187 S.W.2d 839, 841 (Ky. Ct. App. 1945); *Rose v. Chaikin*, 453 A.2d 1378, 1381 (N. J. Super. Ct. Ch. Div. 1982).

Courts should not base their determination concerning whether particular noise is a nuisance based on the subjective likes and dislikes of particular plaintiffs, *see Burgess v. Omahawks Radio Control Org.*, 362 N.W.2d 27, 29 (Neb. 1985), but rather on an objective standard based on reasonableness. *See Stiglianese v. Vallone*, 666 N.Y.S.2d 362, 364 (App. Term 1997); *Atkinson v. Bernard*, 355 P.2d 229, 233 (Or. 1960). Whether a particular noise is sufficiently excessive to constitute a nuisance is ordinarily a question of degree and locality – in essence a question of fact to be considered in light of all the attending circumstances. *Cf. Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn. App. at 402, 391 S.W.2d at 9. The circumstances most frequently considered in determining whether noise amounts to a nuisance include: (1) the locality, (2) the character of the neighborhood, (3) the nature of the use causing the noise, (4) the extent and frequency of the injury, (5) the time of day when the noise occurs, and (6) the effects on the enjoyment of life, health, and property of those affected by the

noise. *See Pate v. City of Martin*, 614 S.W.2d at 47; *see also Warren County v. Dickson*, 195 S.E. 568, 570 (Ga. 1938); *Finlay v. Finlay*, 856 P.2d 183, 189 (Kan. Ct. App. 1993); *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369, 372 (Mo. Ct. App. 1988).

## III.
### REMEDIES FOR NUISANCES

Land use planning and control are inherently legislative prerogatives. *See Robertson County v. Browning-Ferris Indus. of Tenn., Inc.*, 799 S.W.2d 662, 667 (Tenn. Ct. App. 1990). Therefore, the constitutional principle of separation of powers requires the judiciary to refrain from usurping the General Assembly's authority over these matters. *See Crabtree v. City Auto Salvage Co.*, 47 Tenn. App. 616, 631, 340 S.W.2d 940, 948 (1960). When, however, a litigant proves that a nuisance exists, the courts must provide an appropriate remedy in the form of either damages or injunctive relief or both. *See Pate v. City of Martin*, 614 S.W.2d at 48; *Naff v. Martin*, 2 Tenn. Cas. (Shannon) 451, 452-53 (1877); *Clack v. White*, 32 Tenn. (2 Swan) 540, 543-44 (1852).

The form that relief should take in a particular case depends on the nature of the nuisance and the harm it is causing. Nuisances fall into one of two categories. They are either temporary nuisances that can be abated by the expenditure of time or money, *see Pate v. City of Martin*, 614 S.W.2d at 48; *Hayes v. City of Maryville*, 747 S.W.2d 346, 350 (Tenn. Ct. App. 1987), or they are permanent nuisances that are likely to continue indefinitely and cannot be abated by the expenditure of time and money. *See Caldwell v. Knox Concrete Prods., Inc.*, 54 Tenn. App. at 406, 391 S.W.2d at 11.

The two remedies available to courts in nuisance cases are damage awards and injunctions. Persons harmed by a temporary nuisance may recover damages for the loss in the value of the use and enjoyment of the affected property, *see Pate v. City of Martin*, 614 S.W.2d at 48; *Louisville & Nashville Terminal Co. v. Lellyett*, 114 Tenn. 368, 403, 85 S.W. 881, 890 (1905). They are entitled only to their damages accrued by the time the suit is filed, *see Wilson v. Farmers Chem. Ass'n*, 60 Tenn. App. 102, 110, 444 S.W.2d 185, 188-89 (1969); *City of Columbia*

*v. Lentz,* 39 Tenn. App. 350, 360, 282 S.W.2d 787, 792 (1955), but they may file successive suits as new damages occur. *See Henegar v. International Minerals & Chem. Corp.*, 209 Tenn. 355, 357, 354 S.W.2d 69, 70 (1962); *Nashville v. Comar*, 88 Tenn. 415, 426, 12 S.W. 1027, 1030 (1890). On the other hand, persons who have been harmed by a permanent nuisance need only file one suit to recover both past and prospective damages and are entitled to recover damages equal to the reduction in the market value of their property. *See Anthony v. Construction Prods., Inc.*, 677 S.W.2d 4, 10 (Tenn. Ct. App. 1984); *City of Murfreesboro v. Haynes*, 18 Tenn. App. 653, 657, 82 S.W.2d 236, 238 (1935).

In addition to awarding damages, the courts may use injunctive relief to abate or mitigate the effects of a nuisance. The courts may also, in proper cases, couple injunctive with monetary relief. *See Pate v. City of Martin*, 614 S.W.2d at 48. Injunctions, however, are drastic remedies that should be used only if no other adequate relief is available. *See Butts v. City of South Fulton*, 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977); *Hagaman v. Slaughter*, 49 Tenn. App. at 346-47, 354 S.W.2d at 822. They should be used sparingly if the nuisance is being created by an otherwise lawful activity, and they should be limited to the acts causing the nuisance. *See Sherrod v. Dutton*, 635 S.W.2d at 119-121.

## IV.
### EFFECT OF THE SEPTEMBER 1981 ORDER

Before turning to the August 1996 order, we must first determine the status of the September 1981 order. The track's neighbors assert that the September 1981 order that enjoined all racing at the track is a final order that is not subject to later modification by the parties or their privies. While this argument is creative, it is unconvincing.

The neighbors' res judicata argument contains two flaws. First, the September 1981 order was not the trial court's final order in the earlier proceeding. The final order was filed in May 1982 in response to Mr. Holt's motion to amend the September 1981 order. Second, permanent injunctions may be reopened and modified or dissolved upon a showing that there has been a material change in circumstances or that the ends of justice would be served by

modifying or dissolving the injunction. *See System Fed'n No. 91, Ry. Employees Dep't v. Wright*, 364 U.S. 642, 647-48, 81 S. Ct. 368, 371 (1961); *Broughton v. Cigna Health Plans*, 76 Cal. Rptr. 2d 431, 440 (Ct. App. 1998); *Shatterproof Glass Corp. v. Buckmaster*, 256 So.2d 531, 533 (Fla. Dist. Ct. App. 1972); *National Elec. Serv. Corp. v. District 50, United Mine Workers*, 279 S.W.2d 808, 812 (Ky. Ct. App. 1955); Restatement (Second) of Judgments § 13, cmt. c (1982).

Bearing these principles in mind, we find that the September 1981 order was replaced by the May 1982 order. Instead of prohibiting races of any sort, the May 1982 order enjoined Mr. Holt and his successors from operating a speedway "until such time as he can and will operate same where the noise level will not be a nuisance to the plaintiffs." This is the order that has shaped the parties' relationship for the past sixteen years. Thus, when the track's neighbors returned to court in 1988 seeking a new injunction, they had the initial burden to demonstrate that Mr. Luna proposed to conduct races at the track and that the noise to be generated by these races would constitute a nuisance. When plaintiffs' initial burden had been satisfied, Mr. Luna, for his part, had the burden of satisfying the trial court that his planned method of operation would not generate noise at nuisance levels in the surrounding neighborhood as alleged and shown by the plaintiffs. The factual issue was for the court to decide.

## V.

### THE AUGUST 1996 ORDER

We come now to the August 1996 order. Mr. Luna challenges the order on two grounds – that it was issued prematurely and that it is overbroad. Based on the facts of this case, we do not find that the order was premature. However, we find that the order does not properly balance the competing interests of the parties because it is too broad and because its terms are too imprecise.

### A.

The track's neighbors carried their burden of going forward with the evidence. They proved that Mr. Luna intended to begin holding stock car races at the track. The evidence showed that as many as twenty-four stock cars would

participate in these races at speeds of up to 130 miles per hour, that some of these races would be held at night, that Mr. Luna intended to construct a grandstand that could accommodate 15,000 spectators, and that Mr. Luna also intended to install a loudspeaker system at the track.

The neighbors' evidence was more than sufficient to support a conclusion that the race track would generate a significant amount of noise. Accordingly, the burden shifted to Mr. Luna to demonstrate that the noise generated by the track would not be excessive and would not impose an unreasonable level of discomfort on the track's neighbors. Rather than contesting the fact that the track would generate a significant amount of noise, Mr. Luna presented evidence concerning the steps he planned to take to reduce the noise and the effects that these remedial steps would have on reducing the noise in the surrounding neighborhoods.

Mr. Luna's evidence failed to convince the trial court that the noise levels at the proposed track would not constitute a nuisance. In fact, based on the proof, the trial court entered an order more stringent than the earlier order. While the May 1982 order had simply enjoined Mr. Holt from operating a track in a way that caused a nuisance to the neighbors, the August 1996 order enjoined Mr. Luna from holding races of any sort at the track.

**B.**

Mr. Luna first asserts that the August 1996 order was premature and that the trial court should not have considered the request for injunctive relief until after he had completed the renovations to the track. He argues that permitting him to complete the track would have enabled him to provide the court with more precise evidence concerning the ambient noise levels in the surrounding community while actual races were being conducted. Even though Mr. Luna might be willing to make a sizeable financial gamble of completing costly improvements to the track with no assurance that he would be permitted to hold races, we decline to find that the trial court's consideration of this issue was premature.

The courts may enjoin the creation of a nuisance before it comes into existence. *See State ex rel. Cunningham v. Feezell*, 218 Tenn. at 22-23, 400

S.W.2d at 718; *Pierce v. Gibson County*, 107 Tenn. 224, 229, 64 S.W. 33, 35 (1901). However, anticipatory injunctions are appropriate only when injury is immanent and certain, *see Butts v. City of South Fulton*, 565 S.W.2d at 882; *Wallace v. Andersonville Docks, Inc.*, 489 S.W.2d 532, 535 (Tenn. Ct. App. 1972), not when there is only a mere possibility or fear of future injury. *See State ex rel. Cunningham v. Feezell*, 218 Tenn. at 24, 400 S.W.2d at 719. If an injury is certain, the decision to grant an injunction does not depend on the nature or extent of the injury. *See Phillips v. Stocket*, 1 Tenn. (1 Overt.) 200, 200 (1806) (White, J.) (holding that "there is no distinction between smaller and larger injuries").

The trial court had sufficient evidence before it in 1996 to determine that the noise generated by the proposed track would cause some adverse effects on the track's neighbors. The trial court had already found in 1979 that the noise generated by the track "permeated" the neighboring homes. Nothing in the evidence presented during the July 1996 hearing indicates that the noise generated by the planned operations of the track in 1996 would be less than the noise generated by the track twenty-three years earlier. Even though the extent of the adverse effects on the surrounding neighborhood is uncertain, the occurrence of adverse effects is sufficiently certain to warrant considering and granting some form of injunctive relief before the track opens.

## C.

The remaining issue involves the breadth of the August 1996 order. Because holding stock car races is a legal activity, the trial court must limit the injunction to only those activities that create the nuisance, *see Sherrod v. Dutton*, 635 S.W.2d at 121, unless the evidence demonstrates that holding races at the track will create a nuisance at all times and under all circumstances. *See Wallace v. Andersonville Docks, Inc.*, 489 S.W.2d at 535. Based on our independent review of the record pursuant to Tenn. R. App. P. 13(d), we have determined that the evidence preponderates against finding that there are no circumstances under which this track could be operated that would not cause a nuisance. Accordingly, an injunction preventing any racing at Mr. Luna's track is not warranted and the August 1996 order must be vacated.

Our decision to vacate the August 1996 order does not leave Mr. Luna to conduct stock car races as he pleases. To the contrary, vacating the August 1996 order has the legal effect of reinstating the May 1982 order that enjoins the track operators from operating the track "until such time as . . . [they] can and will operate same where the noise level will not be a nuisance to the plaintiffs." Thus, Mr. Luna, as Mr. Holt's successor, remains enjoined from operating the track in a way that causes a nuisance to the track's neighbors.

Ending our discussion here would leave the parties no better off than they have been since 1979 because they still lack objective standards for determining whether or not the noise from the track constitutes a nuisance. Even though the trial court concluded in 1981 that a noise level of 81 decibels was a nuisance, this standard is inadequate because it fails to indicate over what period of time the noise level should be averaged or the time of day when this noise level would be a nuisance. Other courts have been successful in fashioning precise noise standards in cases similar to this one. S*ee Sherrod v. Dutton*, 635 S.W.2d at 120 n.3. Likewise, many local governments and at least one federal agency have established noise control regulations containing prescriptions for appropriate sound levels for particular environments and particular times of day.[1]

The dispute surrounding the operation of this track has been in and out of court for the past twenty years and requires a definitive closure. The parties are entitled to a definitive ruling either that operating a track on Old Boonshill Road is a nuisance per se that will not be allowed under any circumstances or that a race track may be operated on Old Boonshill Road as long as it meets objective, well-defined noise levels suitable for the locality and the character of the surrounding neighborhood as well as the time of day when the races will be conducted. Therefore, we remand this case to permit the parties to present evidence that will enable the trial court to decide, once and for all, whether a track may be operated on Old Boonshill Road and, if it may be operated, the conditions for its operation.

**VI.**

---

[1]The neighbors' noise control expert alluded to several of these standards in his survey and report prepared in July 1996.

We vacate the order entered on August 13, 1996 and remand this case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Frank Luna and his surety and, jointly and severally, to all plaintiffs for which execution, if necessary, may issue.

-13-

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE